

**JON A. GEGENHEIMER**

## JEFFERSON PARISH CLERK OF COURT

*24th Judicial District Court Civil Records Division – FAX Filing*

P.O. Box 10 ● Gretna LA 70054-0010 ● (504) 364-2971



# FACSIMILE FILING RECEIPT OF TRANSMISSION

**To:** CHELSEA B. CUSIMANO, ATTORNEY
FAX # 504-304-4759
Email: tkeller@brenerlawfirm.com

October 02 , 20 20

**From:** s/ Randi N. Prisco , *Deputy Clerk of Court*
24th JDC FAX Filing ● (504) 364-2971

**Re:** **Case #:** 810-813   **Div.:** M

**Case Title:** NYRON HARRISON, Et Al vs JEFFERSON PARISH SCHOOL BOARD, Et Al

**Total Number of Pages:** 41

**Document Type:** PETITION FOR JUDICIAL REVIEW, AND ALTERNATIVELY, WRIT OF MANDUS, PETITION FOR DAMAGES AND REQUEST FOR JURY TRIAL/ EXHIBIT A, EXHIBIT B, EXHIBIT C

**Receipt is hereby acknowledged of the above described document, which was filed at** 02:56 ☐ A.M. ☒ P.M. **on** October 02 , 20 20.

PLEASE TAKE NOTICE that per La. R.S. 13:850, as amended by Act 109 of the 2016 Regular Legislative Session, the following shall be delivered to the clerk of court:

1. Fees for the facsimile filing and filing of the original document as stated below.
2. A transmission fee of $5.00.
3. Original documents identical to the facsimile filing in number of pages and in content of each page including any attachments, exhibits, and orders. Original documents which are not identical to the facsimile filing or which include pages not included in the facsimile filing shall not be considered the original document.

NOTE: Although fees due may be paid by credit card, the facsimile filing shall have no force and effect if the original documents are not delivered to the clerk of court within 7 (seven) days, exclusive of legal holidays, after the clerk of court receives the facsimile filing.

NOTE: Per La. R.S. 13:850, the facsimile filing fee and transmission fee are incurred at the time the clerk of court receives the fax transmission, and the fees are due and payable regardless of whether the original documents are received.

☒ **Check, credit card, or money order to "Jefferson Parish Clerk of Court"** $ $1,300.00

☒ Check or money order payable to "East Baton Rouge Sheriff": $ $34.48

☐ Check or money order payable to "Jefferson Parish Sheriff": $

☐ Check or money order payable to "Orleans Parish Civil Sheriff": $

☐ Check or money order payable to "Louisiana Secretary of State": $

☐ Check or money order payable to _____ : $

☐ Check or money order payable to _____ : $

☒ Send the La. Civil Case Reporting form required per La. R.S. 13:4688.

☒ Other: JURY FEE INCLUDED

Payments to Jefferson Parish Clerk of Court can be made by credit card, all other payments must be sent by check or money order.
To pay by credit card go to: https://ssl.jpclerkofcourt.us/JeffNetGo/CaseDeposit select court "24th Civil JDC" and enter this case number.

# ***PLEASE ENCLOSE A COPY OF THIS ACKNOWLEDGMENT

Received: Oct 02 2020 14:56:29 Pages: 41  JobID:email_GBBP6KMH51

# WHEN ORIGINAL PLEADING IS SUBMITTED.***

24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020



# BRENER & KRAUS, LLC

3640 MAGAZINE ST
NEW ORLEANS, LA 70115
P (504) 302-7802
F (504) 304-4759

October 2, 2020

24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020

*Via E-file:*
24th JDC, Parish of Jefferson
Clerk of Court
200 Derbigny Street
Gretna, Louisiana 70053

       Re:    Nyron Harrison, Thelma Williams, Individually and obo Their Minor
               Child, K▮▮▮▮ H▮▮▮▮ v. Jefferson Parish School Board, Dr. James
               Gray, Cecily White, Terri Joia, and Patricia Adams

Dear Sir or Madam:

    Attached please find a Petition and Exhibits related to the above referenced matter. Please fax-file said pleading into the Court record and upon receipt of your fax-file confirmation with filing and service fees we will forward the original within seven (7) days via federal express.

    Thank you for your cooperation in this matter.

                     Very truly yours,

                     Chelsea Brener Cusimano

CBC/tk
Attachment

LISA BRENER | 1953-2019    DOUGLAS R. KRAUS PARTNER | DKRAUS@BRENERLAWFIRM.COM

CHELSEA BRENER CUSIMANO PARTNER | CBCUSIMANO@BRENERLAWFIRM.COM    SUSANNAH C. MCKINNEY PARTNER | SMCKINNEY@BRENERLAWFIRM.COM

**24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

NO.: _____                                     DIVISION _____

**NYRON HARRISON, THELMA WILLIAMS, INDIVIDUALLY AND ON BEHALF OF THEIR MINOR CHILD, K▇▇▇▇ H▇▇▇▇**

**VERSUS**

**JEFFERSON PARISH SCHOOL BOARD, DR. JAMES GRAY, CECILY WHITE, TERRI JOIA, AND PATRICIA ADAMS**

FILED _____          _____
                                                  **DEPUTY CLERK**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### PETITION FOR JUDICIAL REVIEW, AND ALTERNATIVELY, A WRIT OF MANDAMUS. PETITION FOR DAMAGES AND REQUEST FOR JURY TRIAL

**NOW INTO COURT**, through undersigned counsel, comes NYRON HARRISON ("Mr. Harrison") and THELMA WILLIAMS ("Ms. Williams"), on behalf of themselves and their minor child K▇▇▇ H▇▇▇▇ [1] ("K▇▇▇") (sometimes collectively referred to as the "Harrison-Williams Family"), both individuals of the age of majority, residents of and domiciled in Jefferson Parish, State of Louisiana, who represent:

1.

This case arises from egregious government overreach, a complete lack of common sense to prevail and correct the glaring failures of local government officials to comply with law, and an 8-year-old boy tripping over a Daisy BB gun in a bedroom he shares with his two younger brothers. After his brother tripped, the 9-year-old picked it up and moved it. This event would not be noteworthy, but for 9-year-old K▇▇▇ being within camera view of a Jefferson Parish school teacher. Defendants then falsely and maliciously charged that 9-year-old K▇▇▇ "possess[ed] weapons prohibited under federal law" and recommended that he be expelled from his school. When Defendants were advised that they were not complying with Louisiana law or even their own policies, they doubled down and compounded their errors. The result is a terrifying intrusion into a family's home and a bureaucratic nightmare that unites the Attorney General, ACLU, and NRA in agreement that the parents and child's statutory and constitutional rights have been violated.

---

[1] In this case, the child's name is already out in the public, and the Harrison-Williams Family has made the decision to publically defend their Due Process rights so this unprecedented matter does not occur to another family. *Cf. Washington Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991) (rejecting sealing of information that had already been reported in the press).

24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020

2.

All of the events, acts, incidents, acts, incidents, and omissions alleged herein took place in Jefferson Parish, Louisiana, and the harm to the Plaintiffs was done in Jefferson Parish, Louisiana. Accordingly venue is proper in this Court.

3.

Plaintiff, K███████ H█████ is nine years old, resident of and domiciled in Jefferson Parish, Louisiana.

4.

Plaintiff, Mr. Nyron Harrison, is an individual of the age of the majority, resident of and domiciled in Jefferson Parish, Louisiana. Mr. Harrison is K██████'s father.

5.

Plaintiff, Ms. Thelma Williams, is an individual of the age of the majority, resident of and domiciled in Jefferson Parish, Louisiana. Ms. Williams is K██████'s mother.

6.

Made Defendants herein are:

A. The School Board of the Parish of Jefferson (hereinafter, the "School Board"), which is a political subdivision of the State of Louisiana, and has the capacity to sue and be sued. The School Board and its office are located in Jefferson Parish, Louisiana;

B. Dr. James Gray ("Superintendent Gray"), individually and officially, in his capacity as Superintendent of the Jefferson Parish School System ("JPS");

C. Cecily White (hereinafter, "Principal White"), individually and officially, in her capacity as Principal of the Woodmere Elementary School. Principal White is an individual of the age of majority, and she is believed to be a resident and domiciliary of Jefferson Parish, Louisiana;

D. Hearing Officer Terri Joia ("Hearing Officer Joia"), individually and officially, in her capacity as a Hearing Officer for Jefferson Parish, and as the deisgnee of the Superintendent at the Due Process Hearing that took place in this matter on September 22, 2020; and

E. Patricia A. Adams ("Ms. Adams"), individually and officially, in her capacity as "Chief Legal Counsel" for the Jefferson Parish School System. Upon information and belief, Ms.



24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020

Adams communicated and advised all purported decision-makers at all stages of reviewing the proceedings against K██████.

7.

K██████, age nine (9), is in the Fourth Grade at Woodmere Elementary School ("Woodmere School"). Plaintiffs Mr. Harrison and Ms. Williams are K██████'s parents. (collectively, all three Plaintiffs are the "Harrison-Williams Family.")

8.

As a result of the COVID-19 pandemic, the parents of the students at Woodmere School, prior to starting the 2020-2021, were given the option for their children to choose between either virtual distance learning or returning to the classroom for on-campus attendance.

9.

The Harrison-Williams Family is a family of seven (7) living in a three-bedroom home in Marrero, Louisiana. K██████ is one of five (5) children, three boys and two girls. The Harrison-Williams Family made the decision to keep K██████ and two of his siblings in Distance Learning following the re-opening of Jefferson Parish Schools to limit the Harrison Family's exposure to COVID-19. While the Harrison-Williams Family began the 2020-2021 school year with all five children doing Distance Learning, the Harrison-Williams Family placed their five-year-old twins back in an on-campus classroom at a different Jefferson Parish School due to the difficulty of having five children receiving virtual instruction in a three-bedroom home.

10.

K██████ shares a bedroom with his two younger brothers, ages eight (8) and five (5). K██████ receives his virtual instruction in that shared bedroom.

11.

While the Harrison-Williams Family attempts to keep their children in separate rooms for their virtual instruction, it is not always possible. Upon information and belief, this is the first year for the Woodmere School to offer virtual instruction, and the live stream classes do not always work as a result of Internet connectivity problems. Sometimes Woodmere School simply does not provide access to virtual instruction for reasons unknown to the Harrison Family. Further, the students participating in virtual instruction also have Physical Education "classes," or "break periods," whereby they are essentially instructed to take a break from the computer screen for the Physical Education period.

3

12.

On September 10, 2020, the K█████ began taking an ELA diagnostic assessment (the "Test"). According to his teacher, Ms. Leslie Williams, K█████ became visibly ill during the Test, and that she could see through the computer screen that K█████ was not feeling well and "had tears in his eyes".[2] Ms. Leslie Williams advised K█████ who was in his bedroom that he could resume the Test the following day.

13.

The following day, September 11, 2020, K█████ continued the Test. At the instruction of his teacher and his mother, K█████ muted the microphone to/from his computer to concentrate on the Test. Indeed, virtual learning students are required to keep their microphones on mute when not directly speaking to the class or asking the teacher a question. Additionally, because Ms. Leslie Williams was actively teaching some in-class students, K█████ muted the teacher's voice to concentrate on finishing the Test.

14.

While K█████ was taking the Test in his bedroom, his younger brother, age eight (8), was on a break from his virtual instruction, which he had been doing in the family's kitchen, and came into their shared bedroom. K█████'s younger brother then tripped over a Daisy BB gun in the boys' shared bedroom.

15.

K█████ picked up the toy BB Gun (a gift purchased from Wal-Mart for his ninth birthday), crossed it over his body (passing the screen), and moved it out of his younger brother's way.[3] K█████ then went back to taking the Test. Hereinafter, this shall be referred to as the "Incident."

16.

K█████ **never** pointed the BB Gun at the screen, and he did not say a word to the class or his teacher. There is no evidence that K█████ was even aware it had been seen. K█████ believed he was doing the right thing, and he had no intent for his toy BB Gun to appear on the computer screen.

---

[2] Ms. Leslie Williams is the Minor Child's teacher. Ms. Thelma Williams is K█████s.
[3] The Woodmere School does not have video footage of the Incident, but no one has disputed the facts of this Incident.

4



17.

Shortly thereafter, K███████ saw his teacher trying to get his attention but is computer remained on mute, since he was taking a test. K███████'s computer screen then abruptly went dark. According to school documents, the connection was cut due to "internet issues" but other children in K███████'s home did not experience any internet issues at the same time.

18.

K███████, knowing that his teacher had been trying to get his attention, went to his older sister's bedroom, and told her he was kicked off his screen. Together, they approached their mother, who was home proctoring her three children.

19.

A JPS document titled the "Louisiana Department of Education School Behavior Report" ("Behavior Report") states that K███████:

> left his seat (at home) momentarily, out of view of the teacher. When the student returned, he had what appeared to be a full-sized rifle in his possession. He placed it on the side of his chair so that we could only see the barrel. I immediately called the student's name to ask him what he was doing with a rifle and to have him remove it from the view of the other students. I called his name a few times. He did not reply. The student had muted not just his voice but appeared to have [muted] the volume on his computer as well so that he would not be disturbed as he took the ELA diagnostic assessment.

> \* \* \* \* \*

> I called his name again, but shortly thereafter, the student was disconnected from the screen due to internet issues. At this time I contacted Principal White to inform her of what had just happened. Ms. White immediately sent the behavior interventionist to my room to investigate the matter. I gave a statement, then the behavior interventionist left my room.

The Behavior Report is attached as Exhibit A. Although the narrative in the Behavior Report is not signed, reason and common sense indicates that this is a statement, or a combination thereof, by K███████'s teacher, Ms. Leslie Williams and a JPS Behavior Interventionist.

20.

According to the Behavior Report, K███████'s mother called Ms. Leslie Williams (K███████'s teacher), to ask about what happened. Ms. Leslie Williams informed Ms. Thelma Williams what happened, and Ms. Thelma Williams, immediately informed K███████'s teacher that she had seen a toy BB gun, not a rifle. Ms. Leslie Williams advised that she was not familiar with BB guns because she did not have little kids, but immediately accepted Ms. Thelma Williams's statement. Ms. Leslie Williams then reported to K███████'s mother that the incident had already been reported to the Principal, Ms. White, and someone would contact her.

21.

Ms. Thelma Williams then called to inform K███████s father of what happened, at which point, Mr. Harrison, who had been attending to his elderly father, rushed home, assuming K█████ had done something. Ms. Thelma Williams again called Ms. Leslie Williams's cellphone at 12:51p.m. and requested that Ms. Leslie Williams explain to Mr. Harrison what happened. As Ms. Leslie Williams was completing her conversation with Mr. Harrison, a behavior interventionist arrived, took Ms. Leslie Williams's cellphone, and began having a conversation with Mr. Harrison. Mr. Harrison explained to the behavior interventionist that the object was a toy BB gun.

22.

Notwithstanding the foregoing narrative, at the top of the Behavior Report, which, upon information and belief, will remain a part of K███████s permanent school record, the Location of the Incident is described as "Classroom and Other" and the Nature of the Incident is falsely described as "13 Possesses Weapons Prohibited Under Federal Law."

23.

No federal law prohibits possession of a Daisy BB gun in a child's bedroom. However, Plaintiffs are unaware of any "weapons prohibited under federal law when they are in the home.

24.

Although the JPS Expulsion/Change of Placement Protocol instructs JPS employees "do NOT issue suspension for a specified number of days; this constitutes double jeopardy, which automatically violates the student's Due Process," Principal White did just that. In a blatant violation of JPS's policies and K███████s rights, the Behavior Report states that Principal White took two actions:

> 09 002 Out of school suspension SUSPENSION BEGINS: 2020-09-16 STUDENT RETURNS 2020-09-29
>
> 29 001 Expulsion recommendation

This document is signed by Principal White and dated September 14, 2020.

25.

JPS policies require a principal or her designee to "immediately meet with a student accused of serious misconduct," "provide a notice of the alleged misconduct[,] and give the student an opportunity to tell his/her side of the story." See Exhibit B. Principal White violated this policy too: she never met with K███████ Indeed, no faculty spoke with K███████ until his expulsion hearing.

24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020

26.

On September 16, 2020, Mr. Harrison and Ms. Williams attended a meeting with Principal White whereby they were asked to submit a written statement from K█████ as to the incident. Mr. Harrison declined to submit such a statement because he did not feel it was appropriate for a nine-year-old boy to do so. Further, Mr. Harrison expressed his frustration with Defendants and what he perceived to be an egregious violation of his privacy rights and failure to inform parents regarding any policies on virtual instruction. Mr. Harrison was informed that events that took place in his own home were essentially the same as if those events took place on campus, in a government classroom.

27.

The family was given a "Woodmere School Expulsion Recommendation" ("Expulsion Recommendation") dated September 16, 2020. It incorrectly states that K█████ is a female. The Expulsion Recommendation also incorrectly states K█████ would be suspended beginning September 16, 2020, though was suspended effective September 11, 2020, and that he would remain suspended pending an expulsion hearing for "12 Possesses weapons prohibited under federal law." Upon information and belief, this Expulsion Recommendation document was given to Mr. Harrison on September 16, 2020, at a meeting that took place between Mr. Harrison and Principal White. A copy of the Expulsion Recommendation Document is attached as Exhibit "C." Again, it cites that the expulsion is being recommended as a result of K█████ violating the "weapons in the classroom setting policy." To reiterate, the offense charged was possession of "weapons prohibited under federal law" despite the fact that Defendants knew and disputed that the purported "weapon" at issue was a toy, that K█████ was in his bedroom when the purported offense occurred, and it was never used or wielded in a threatening manner.

28.

The Harrison-Williams Family did not receive the proper expulsion packet required by JPS's policies. They did not receive any "Due Process rights" document; they did not receive the Superintendent Expulsion Cover Sheet; they were not advised of the laws to be applied at a hearing; and they were not informed about three (3) witness statements until the family retained counsel who expressly asked the school for all information the Woodmere School planned to use at K█████s Due Process Hearing. Indeed, one such document is signed and dated September



17, 2020, *i.e.*, after Mr. Harrison and Ms. Williams met with Principal White and Mr. Harrison objected to expressed the Woodmere School's violating the Harrison-Williams Family's rights.

29.

On Monday September 21, 2020, at 10:08 a.m. with less than 24 hours notice Mr. Harrison was notified via text message that a "Grayson" was to have a Due Process Hearing the following day. At 10:17 a.m. Mr. Harrison received another text message -- this time with the K████'s name – stating that K████'s Due Process Hearing for his pending recommendation for expulsion would take place on September 22, 2020, at 9:00 a.m. Nothing further was provided to Mr. Harrison. Again, Mr. Harrison did not receive a copy of the laws or procedures that would be used to conduct the hearing the following day, nor did he receive the witness statements, student file or Jefferson Parish Policies and Procedures at any point from Defendants.

30.

On Monday September 21, 2020, the Harrison-Williams Family's counsel called Christopher Durden, Administrative Assistant for Jefferson Parish Schools, and informed JPS that she would serve as K████'s representative at the Due Process Hearing taking place the following morning. Mr. Durden stated that he would need to refer the issue to legal because an attorney was involved. Thereafter, Mr. Durden sent the Harrison-Williams Family's counsel a zoom link at 1:06 p.m. via email with Ms. Patricia Adams and copied Mr. Darvell Thomas thereto.

31.

On Monday September 21, 2020, the Harrison-Williams Family's counsel requested that she be provided with the same records that would be used at the hearing to better aide in K████'s defense.

32.

JPS provided the Harrison-Williams Family's counsel with a copy of the Jefferson Parish "Procedures & Policies for Parents & Students" for 2019-2021 school year. An "Expulsion /Change of Placement Protocol" Flowchart was also provided. Again, this was the first time that the Harrison Family learned of any witness statements given by classmates or by the Behavior Interventionist, after he was entitled to the Pre-Expulsion packet.

24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020

33.

The information Defendants provided suggests JPS did not follow the statutory requirement for an annual review of disciplinary policies, hearing, and notice to parents and children of such policies. *See* La. R.S. 17:416.8.

34.

On September 21, 2020, after receiving "the only records that will be used in this case" and the policies/procedures JPS assured the Harrison-Williams Family's counsel that would be applied at the Due Process Hearing, their counsel recognized another gap in the documents sent to the Harrison-Williams Family. Harrison-William's Family Counsel emailed Ms. Patricia Adams (Senior Legal Counsel at JPS):

> **Ms. Adams,**
>
> **A cursory review of this material shows that this involves events occurring on school campus or at school events, etc. As this was a virtual learning event, have there been any policies or procedures put in place since COVID-19 by Jefferson Parish School Board that I should be aware of that Mr. Edwards did not attach?**

Ms. Adams did not respond. As such, the Harrison-Williams Family entered into the 2020 school year without any policies and procedures in place for the virtual learning school year or any policies regarding incidents that might occur in a student's home. Additionally, Defendants have not identified any policies or procedures, given to parents regarding "virtual classrooms." This is corroborated by the fact that the Jefferson Parish Policies for Parents and Students was written in 2019, and the Jefferson Parish Policies and Procedures for the Board regarding suspension and expulsion, which can be found online, were last updated in 2019.

35.

Next, after obtaining consent from Mr. Harrison, the Harrison-Williams Family's counsel received K████s file. The family learned for the first time that the Defendants had taken witness statements from two children in K████s classroom. Had the Harrison-William's Family counsel not asked, the family would have never known about the witness statements JPS planned to use against K████ at his Due Process Hearing.

36.

After reviewing the student file and the policies and procedures provided for the upcoming Due Process Hearing the following morning, the Harrison-Williams Family's counsel again reached out to JPS and requested their policies and procedures in place for Distance and/or Virtual Learning for the 2020-2021 School Year that would be applicable in this case.

24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020

Shockingly, their counsel was essentially advised that no such policies existed and the Harrison-Williams Family had been given all of the policies and procedures that would apply in this hearing (this was not the case). As of the date of the filing of this lawsuit, the Harrison-Williams Family has not been provided with any modified policies and procedures that even remotely apply to K█████'s unfortunate Incident.

<div align="center">37.</div>

Prior to the Hearing, undersigned counsel advised JPS that she would be submitting a Position Statement on K█████'s behalf. She was informed that the Position Statement could arrive by 8:30 a.m. the morning of the Due Process Hearing. A copy of the Position Statement is attached hereto as Exhibit "D."

<div align="center">38.</div>

The Due Process Hearing (the "Hearing") took place on September 22, 2020, at 9:00 a.m. Present at the Hearing was the Hearing Officer, Ms. Terri Joia; Principal White; K█████'s teacher, Ms. Leslie Williams; the Behavior Interventionist, Ms. Stacie Trepagnier; K█████'s father, Mr. Harrison; K█████'s mother, Ms. Thelma Williams; and undersigned counsel. K█████ was asked to give a statement at the Hearing, which he did, and which was consistent with the statement of his teacher, Ms. Leslie Williams, but he did not otherwise participate in the Hearing.

<div align="center">39.</div>

Terry Joia ("Hearing Officer Joia") began the Hearing by stating "we are going to go over the due process procedure to ensure that all of the procedures were followed." K█████'s counsel immediately objected that Due Process in K█████'s case already had been denied. Thereafter, the Hearing took place as follows:

- Hearing Officer Joia asked if K█████ was made aware of the offense against him; the Harrison-Williams Family's counsel stated that it was because K█████ was charged with "possession of weapons prohibited under federal law."

- Hearing Officer Joia then asked if K█████ received written documentation of the action taken. The Harrison-Williams Family's counsel replied that the documentation and expulsion recommendation came from Principal White, and not Superintendent Gray as required by JPS policies and procedures. Counsel further stated that K█████ was not given the proper pre-expulsion packet required by JPS policies.

- K█████'s counsel reminded the Hearing Officer: "The event happened on the 11th, we are now at the 22nd and the child has not been allowed back at school and has been suspended since."

<div align="center">10</div>



- K▇▇▇'s counsel stated that this simultaneous punishment in his pre-expulsion paperwork was a violation of K▇▇▇'s Due Process rights as set forth in JPS's procedures. Principal White stated that this "was an error on our part." K▇▇▇'s counsel advised all Parties that this was more than just an error, it was a Due Process violation.

- Hearing Officer Joia then specifically asked, at the 7:50 minute marker, *"So he was given the rights with the notification that he would have the recommendation for appeal. The law."*

- Hearing Officer Joia then proceeded with the hearing. Hearing Officer Joia opened with: "What we are looking at is really Jefferson Parish Policies ... look at Revised Statute 17:416.1 and you look at the due process procedures as it is mandated in the law it is a little bit more rigid in Louisiana than what it is in the state guidelines."

- Next, Hearing Officer Joia stated that "The reason for the recommendation is for the possession of an unlawful firearm…during school activities." She then opined that "when you are involved in a lesson online ... it really is an extension of the classroom." When K▇▇▇'s counsel attempted to ask for policies and procedures to handle virtual learning, but was quickly cut off by Hearing Officer Joia who stated her conclusion that "look[ing] at the law and it really indicates there that it carries over from the physical building to any activity that is covered under the school grounds."

- Next, Hearing Officer Joia identified herself for the record as the designated hearing officer for the Superintendent and informed the Harrison Family that the hearing will be conducted pursuant to LSA R.S. 17:416 and 17:416.1. Hearing Officer Joia incorrectly stated: "You [were] provided a copy of these laws when you receive notice of a recommendation for expulsion."

- Regarding the incident itself, K▇▇▇'s teacher made clear that K▇▇uri did not point the BB gun toward the screen, and that "it appeared that he was moving it from one spot to another" And Principal White conceded that "[a]s far as I know he told me it was not a rifle it was a BB gun something he allows in his home" and "the dad expressed the sentiment immediately that he felt this was being blown out of proportion because this was in the privacy of his home." Principal White then stated that she "consulted the district to find out what protocol I needed to take to address the situation and I was told by discipline that I should move forward with expulsion recommendation" Likewise, the Behavior Interventionist testified that Mr. Harrison "expressed concern about the whole situation, he felt again that this was an invasion of privacy," "he felt this was an invasion of privacy as it relates to virtual learning and the location of the room that his son was in," but that she had "explained to him that it was still considered a weapon[.]"

- Principal White testified that she "explained to [Mr. Harrison] that any replica of a gun in a school setting is an expulsion recommendation"… "Even if a water gun is presented at school, we go through the same procedure, it is protocol." K▇▇▇'s counsel responded that her "main issue with this is not a weapon prohibited under law – I can't find anything that this is in internet policy – and I can't reconcile the fact that the due process protocol was not followed here."

- When asked to give a statement, and Mr. Harrison testified that he teaches his kids how to properly use the BB guns in the yard – he knows the difference between right and wrong – "it is very important to the family that this be dismissed, that it does not follow him in his educational career, and that the school did not follow his due process rights."

- K▇▇▇'s counsel again objected to the plethora of Due Process violations: "Ms. Joia I urge you to look at the fact that his Due Process rights were violated and if you find that it warrants a dismissal." "We have a due process violation so

24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020



of course I am going to appeal it for violating his due process" … "If they have to hire me to appeal this matter, we are talking about extensive attorney fees." When K██████'s counsel questioned Hearing Officer Joia about the JPS policies and procedures provided to her, Hearing Officer Joia stated *"that's apparently not correct what they have in the procedures."* K██████'s counsel clarified: so **"basically we are facing Jefferson Parish policies and procedures contradicting Louisiana law?" Joia immediately responded "right"**

- K██████'s counsel explained: "[Y]ou do realize that y'all are submitting policies and procedures that are required to be submitted to the student prior to an expulsion recommendation that are inaccurate then" … "I am going to appeal it, I am going to bring it to the Superintendent[.]" "I am willing to appeal this and I really hope you consider that."

- Hearing Officer Joia then stated: "Ill send this to [Ms. Adams]… and so that way she can take a look at it." … "Ill send this to her and ill have her take a look at it and **if she makes a recommendation I would be more than happy to follow it.**" Hearing Officer Joia elaborated: "**I am going to send this to Ms. Adams so it may take a little bit longer, you do have a right to appeal within five (5) days.**"

40.

Upon information and belief and in accordance with Hearing Officer Joia's statements, Ms. Adams was the *de facto* decision-maker. She was not, however, present at K██████'s hearing.

41.

Multiple Due Process violations occurred at the hands of Defendants in the days leading up to K██████'s Due Process Hearing, and at the Due Process Hearing itself.

42.

After the Hearing had closed, K██████'s counsel reached out to Ms. Adams to inform her of the multiple Due Process violations. Thereafter, Ms. Adams, directed K██████'s counsel to the JPS website for yet another set of policies for the School Board with a direct reference to Section J Due Process. Shockingly, these policies were not provided to Ka'Mauri's counsel prior to the hearing despite repeated requests for the policies and procedures that would control the proceedings against K██████.

43.

The very next day, on Wednesday, September 23, 2020, at 10:22 a.m., the Harrsion-Williams Family received the Hearing Officer's decision letter. The title of the email from Mr. Durden reads: "Hearing Officer's decision letter **on the recommendation of expulsion** for K██ ████ H████ from Woodmere School." The email attached a Hearing Officer Decision Letter dated September 22, 2020 (the same date of the hearing) and identified as "**Re: Hearing Officer Determination on Recommendation of Expulsion.**" The Hearing Officer Decision Letter is

24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020

addressed to Ms. Thelma Williams and indicates that "based upon the evidence presented at the hearing conducted on September 22, 2020[4], it has been determined that [K███████] is guilty of **displaying a facsimile weapon while receiving virtual instruction** from Woodmere Elementary School," *i.e.*, a *different* purported offense under JPS policies from the purported "possesses weapons prohibited under federal law" offense that the Harrison-Williams Family was notified would be at issue at the Hearing. The Hearing Officer Decision Letter then goes on to recite the "Jefferson Parish Public School Policy and Procedures 2019-21-Possession of a Starter Gun, Stun Gun, and/or Facsimile…"

44.

The Hearing Officer Decision Letter then goes on to recite JPS Policy for Teachers & Parents (presumably created in 2019), to state that if any child is found guilty the following shall occur: "students in kindergarten through grade (6) may be expelled from the school system unless other corrective or disciplinary action is recommended by the superintendent or his/her designee." **This is not the offense for which K████████was provided notice and tried in his Due Process Hearing.**

45.

The Hearing Officer Decision Letter then goes on to state that the "recommendation for expulsion is to be amended to disciplinary action of six (6) days out of school suspension[5]… **and a social work assessment.**" Further, it should be noted that K████████was not permitted receive to virtual instruction on September 11; he no education at all, not even homework assignments, for nine days. Additionally, as of the date of the filing of this Petition, while K████████ is now receiving virtual instruction, he has not been provided with a packet of any work that he missed during his suspension.

46.

Upon receipt of the Hearing Officer Decision Letter, the Harrison-Williams Family's counsel requested an appeal:

> This is a violation of Jefferson Parish's policies and procedures provided to me, as well as a violation of K██████s Due Process. A 6 day suspension [*sic*] for the rest of his schooling career, that he will have to report to colleges and universities will ruin this

---

[4] The amount of Due Process K██████ received in determining his guilt was a manner of hours, if not minutes as the letter is dated as the same date of the hearing itself. Notwithstanding the foregoing, the Harrison Family did not receive the decision until September 23, 2020, depriving the Minor Child of another day of education due to the Defendants malicious delay.

[5] Was the Minor Child to remain out of his bedroom for a period of six (6) days?



child's life. We want to immediately appeal this decision, and I would request a copy of the Hearing.

Ms. Adams responded less than forty minutes later:

> There is no right of appeal for a suspension. See La. R.S. 17:416.

47.

Contrary to Ms. Adams's response, La. R.S. 17:416 provides, in relevant part:

> (C)(1) Upon **the recommendation by a principal for the expulsion of any student** as authorized by Subsection B hereof, a hearing shall be conducted by the superintendent or by any other person so designated to do so by the superintendent to determine the facts of the case and make a finding of whether or not the student is guilty of conduct warranting a recommendation of expulsion. Upon the conclusion of the hearing and upon a finding that the student is guilty of conduct warranting expulsion, the superintendent, or his designee, shall determine whether such student shall be expelled from the school system or if other corrective or disciplinary action shall be taken.
> * * * *
> (4) The parent or tutor of the pupil may, within five days after the decision is rendered, request the city or parish school board to review the findings of the superintendent or his designee at a time set by the school board; otherwise the decision of the superintendent shall be final. If requested, as herein provided, and after reviewing the findings of the superintendent or his designee, the school board may affirm, modify, or reverse the action previously taken.

(emphasis added). Likewise, the "Procedures and Policies for Parents and Students, given to the Harrison-William's Family in preparation for the Due Process Hearing stated that "[a] student **recommended for expulsion** shall have a right to a hearing and review by the School Board in accordance with Board Policy JDE."[6]

48.

On September 24, 2020, the Harrison-Williams Family's counsel emailed the members of the School Board and Ms. Adams, again requesting review of the Hearing Officer's decision, providing an analysis of La. R.S. 17:416, and noting that one of the School Board members had informed her that had only recently been made aware of K██████s plight via email.

49.

On September 25, 2020, Mr. Harrison emailed Tiffany Kuhn, President of the School Board:

> Good Afternoon. My Attorney has requested on two occasions now that the School Board take my son's Decision under appeal. Will you, as the School Board President, please consider my son's suspension for an appeal.
>
> Thank you,
> Nyron Harrison

50.

---

[6] Pg. 11 of JPS Procedures and Policies for Parents and Teachers states this. There is a different set of policies and procedures to be applied by the Board, which can be found online.

24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020



On September 25, 2020, Ms. Adams replied on behalf of President Kuhn. The email read:

Ms. Cusimano:

As noted below, Ms. Kuhn asked me to respond to Mr. Harrison's request for Board review on her behalf. I would ask that you communicate the following response to your client.

Mr. Harrison:

In response to your request to appeal your son's suspension to the School Board, Board President Tiffany Kuhn has asked me to provide an explanation as to why K████'s suspension is not subject to review by the School Board.

Board Policy JDE - Expulsion - states that a parent may request Board review of the Superintendent's decision to expel a student. Board Policy JDE reflects state law, which says that a student has a right to appeal an expulsion to the school board.

Board Policy JDD - Suspension - on the other hand, states that, with regard to a suspension, the decision of the Superintendent shall be final. That is, there is no right of Board review when a student is suspended. Again, the policy is consistent with state law which states that, "The decision of the superintendent of schools on the merits of the case, as well as the term of the suspension, shall be final, . . . ."
In other words, under Board Policy and state law, the decision of the Superintendent (or his designee, in this case, Ms. Joia) to suspend a student is final and there is no right of appeal to the School Board.

Because the School Board is bound to act in accordance with its own policies, the Board is not able to grant your request to review the Superintendent's decision in your son's case.

Ms. Adams's response was incorrect with respect to state law and the Procedures & Policies for Parents & Students given to the Harrison-Williams family, specifically with respect to the definition of "due process" on page 11 thereof. The policy, as written, recognizes the difference between a standard suspension and a "recommendation for expulsion."

51.

On September 29, 2020, the Attorney General of Louisiana issued a letter to BESE and the Superintendent regarding children "recommended for expulsion" based upon allegations of misconduct that occurred at their homes. The Attorney General explained that "the misreading of the plain text of the law by the Chief Legal Counsel for the Jefferson Parish School Board who has cited to Board policy as authority for superseding rights that are unambiguously provided in statute" is "wrong." A copy of that letter is attached hereto as Exhibit "E."

52.

On September 29, 2020, the Harrison-Williams Family's counsel and Mr. Harrison attached the Attorney General's Letter to an additional request that the School Board hear an appeal hearing for K████s suspension and the associated social work assessment. That request initially fell on deaf ears.

53.

Finally, on September 30, 2020, in one last effort to persuade Defendants to follow the law, the Harrison-Williams Family's counsel sent Ms. Adam and Ms. Kuhn and a clip of the Hearing where Hearing Officer Joia advised the Harrison-Williams Family and their counsel that following the decision (which might be something other than expulsion) the family had five (5) days to appeal that decision. Shortly thereafter, Ms. Adams wrote back that Hearing Officer Joia "Ms. Joia is not an attorney," she "may have misstated the law," and "it would appear that [Attorney General] Landry made the same error." President Kuhn and Superintendent Gray were copied on Ms. Adams's email.

54.

Thereafter, in a last-ditch effort to avoid litigation, the Harrison-Williams Family's counsel responded to Ms. Adams, specifically identifying numerous statutory, procedural, and Due Process violations in the proceedings against K███████. Ms. Adams responded

> Quibbling about clerical errors in paperwork will not go very far when the student has received far more process than is due under such circumstances... K██████i received more than sufficient process to satisfy the requirements of the state and federal law.

> I cannot, and will not, recommend Board Review of K██████'s suspension, nor will I recommend expungement of his record because the facts are simply not as you have presented them in your similarly unprofessional efforts to litigate this matter in the press.

55.

Defendants have yet to provide K███████ with the work that he missed.

**Mandamus or, Alternatively, Judicial Review[7]**

I.

K███████ reasserts the allegations of facts set forth hereinabove in Paragraphs 1 through 55.

II.

A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law.

III.

---

[7] This Petition includes both summary and ordinary proceedings. Plaintiffs respectfully submit that the complex facts and violations as stated herein might need the opportunity to be handled in one Court. Accordingly, both are brought in a single petition, which this Honorable Court may choose to handle in separate trials. La. C.C.P. Art. 464.

24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020

La. R.S. 17:416 was applied by the Hearing Officer and is applicable to the proceedings against K█████. La. R.S. 17:416(C)(4) imposes upon the School Board a nondiscretionary duty to "affirm, modify, or reverse" the findings of the Superintendent or his designee if requested to do so by the parent or tutor of the pupil. K█████s parents have so-requested.

IV.

The School Board refused to perform its non-discretionary duty to review.

V.

Alternatively, the School Board implicitly affirmed the findings of the Superintendent or his designee, such that K█████s parents "may, within ten days, appeal to the district court for the parish in which the student's school is located, an adverse ruling of the school board in upholding the action of the superintendent or his designee." La. R.S. 17:416(C)(5). In accordance with the statute, the Harrison-Williams Family so appeals and requests that this Court review and reverse the action of Superintendent Gray and Hearing Officer Joia.

## Count I
### 42 U.S.C. § 1983 and State and Federal Constitutional Procedural Due Process Claims
### (Against All Defendants)

1.

K█████ reasserts the allegations of facts set forth hereinabove in Paragraphs 1 through 55.

2.

K█████ has a right to Procedural Due Process pursuant to the State Constitution and Federal Constitution.

3.

Defendants violated Ka'Mauri's rights to Procedural Due Process while acting under color of state law, individually and collectively.

4.

Defendants are liable to K█████ for Defendants' violation of K█████s rights to Procedural Due Process because the unconstitutional actions of Defendants were encouraged, approved, caused by, tolerated, permitted or ratified by established customs, policies, practices, or procedures established by the Jefferson Parish School Board, and all Defendants, including but not limited to the following procedural violations.

5.

24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020



Defendants subjected K█████to a fundamentally unfair process.

6.

Defendants failed to issues policies and procedures that gave adequate notice of conduct that would subject K█████ to discipline. Defendants also failed to create directives understandable to the average student or to parents

7.

Defendants failed to follow the policies and procedures that they did issue to the Harrison-Williams Family on the day before his Due Process Hearing.

8.

Defendants purported to change their policies at the Hearing without proper notice.

9.

Inconsistent Application of Board Policy and State Law, and application of State law in a manner that is inconsistent with state law and procedures.

10.

Failure to provide adequate notice of the Due Process Hearing as required by law.

10.

"[N]o principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge are among the most fundamental rights in any proceeding where notice is required." *LaBrosse, Sr., v. St. Bernard Parish School Board*, 483 So.2d 1253 (La. App. 4 Cir. 2/14/1986). Defendants nevertheless falsely charged K█████ with "possesses weapons prohibited under federal law" then found K█████ "guilty" of a different charge: "possession of a starter gun, stun gun and/or facsimile" without providing K█████ notice or the opportunity to defend against that charge.

**Count II.**

**42 U.S.C. § 1983, State, and Federal Constitutional Fundamental Rights**
**(All Defendants)**

1.

K█████ and the Harrison-Williams Family reasserts the allegations of facts set forth hereinabove in Paragraphs 1 through 55.

2.

"The child is not the mere creature of the state." *Pierce v. Society of Sister*, 268 U.S. 510 (1925). "The liberty protected by the Due Process clause of the United States Constitution

24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020

includes the right of parents to establish a home and bring up children and to control the education of their own." *Troxel v. Granville*, 530 U.S. 57 (2000).

3.

Defendants interfered with and are continuing to interfere with the Harrison-William Family's right to direct K███████s upbringing free from government interference, including but not limited to by punishing K███████for non-disruptive conduct in his own bedroom and by threatening a false and malicious referral to a social work assessment which would result in intrusion to the parent-child relationship. Upon information and belief, a social work referral would also intrude into the Harrison-William home and other constitutional rights.

4.

Further, Defendants have stigmatized the Harrison-Williams Family by making concrete assertions of wrongdoing by K███████, and implicitly his parents, which have resulted in harm and impairment to the Harrison-Williams Family, including, but not limited to by impairing K███████s education and educational opportunities. In addition, K███████ is *exposed* to a referral to the District Attorney for further action.

5.

Defendants retaliated against the Harrison-Williams Family for seeking to vindicate their child's constitutional rights and for speaking publically about the denial of their constitutional rights, in violation of the First Amendment of the United States Constitution and Article 1 Section 7 of the Louisiana Constitution protecting freedom of expression.

6.

Defendants violated the Harrison-William's Family's Right to Privacy pursuant to the Fourteenth of the United States Constitution and Article 1 Section 5 of the Louisiana Constitution by treating the Harrison-William's Family home as an extension of government property.

7.

Finally, Defendants failed to train and/or supervise its Hearing Officers, its teachers, and its principals, resulting in the deprivation of the Harrison-William's Family constitutional rights.



### COUNT III.
### 42 U.S.C. §1985
### All Defendants

1.

K█████, and the Harrison-Williams Family, reasserts the allegations of facts set forth

hereinabove in Paragraphs 1 through 55.

2.

All Defendants conspired to deny the Harrison-Williams Family their State and Federal

Constitutional rights as alleged herein.

### COUNT IV
### Defamation
### Principal White

1.

K█████reasserts the allegations of facts set forth hereinabove in Paragraphs 1 through

55.

2.

Upon information and belief, Principal White, individually and in her official capacity,

defamed Plaintiff to multiple individuals, throughout the Jefferson Parish School System, by

knowingly, intentionally and maliciously making false statements concerning K█████ as set

forth in this Petition. Substantial, ongoing damage to K█████ resulted, including but not

limited to damage to his reputation, interference with his ability to have a clean school record,

loss of education, loss of reputation, emotional distress, anxiety, humiliation, loss of enjoyment

of life, and exposure to further action in the Criminal Justice system.

3.

Specifically, Principal White executed one or more documents falsely stating that

K█████ "possesses weapons prohibited under federal law."

4.

Principal White made these defamatory statements intentionally, on numerous occasions,

knowing all the while that the alleged "weapon" was a toy, and then transmitted these statements

to the Hearing Officer, K█████ parents, the School Board, the Superintendent, and likely

numerous other Parties that will become apparent through discovery. Principal White knew that

this statement was false; she knew the incident involved a BB gun.

24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020



## COUNT V
## Detrimental Reliance
### Principal White, School Board, Superintendent & Ms. Adams

1.

The Harrison-Williams Family reasserts the allegations of facts set forth hereinabove in Paragraphs 1 through 55.

2.

Prior to the Due Process Hearing, the Harrison-Williams Family, through its counsel, was given a "pre-expulsion packet," as well as the "Jefferson Parish Policies and Procedures For Parents and Student," as well as the "Expulsion Flow Chart," upon specific request by the Harrison-Williams Family counsel. The fact that these were the policies and procedures that would apply at K██████'s hearing was undoubtedly a promise made by Defendants, Principal White, Ms. Adams, Superintendent Gray, and the School Board. They did not apply those policies and procedures at K██████'s hearing.

3.

Hearing Officer Joia informed the Harrison-Williams Family that she has to apply the law, and further stated several times that they would have the right to an appeal of the decision so long as they requested it within five days of the Hearing Officer Decision Letter.

4.

The Harrison-Williams Family reasonably and justifiably relied on the promises of Principal White, Ms. Adams, Superintendent Gray and the Jefferson Parish School Board's promise that these would be the policies and procedures, as well as the "Expulsion Flow Chart," that would apply to K██████ at his Due Process Hearing on September 22, 2020.

5.

The Harrison-Williams Family reasonably and justifiably relied on the statements made by Hearing Officer Joia that the Harrison-Williams Family would be entitled to an appeal.

6.

The Harrison-Williams Family's reliance on this promise was to their detriment, at these policies and procedures were not applied in the Due Process Hearing held for K██████, and now, the Defendants, at the recommendation from Ms. Adams for each Defendant, is disregarding this promise made by the Representative of the Superintendent.

24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020

7.

The Policy specifically asserted that if a Due Process violation occurred, such as a procedural Due Process matter, then the charges would be dismissed. The policies include the following promises:

a. Providing a parent with a pre-expulsion packet. The pre-expulsion was incomplete as it did not have the Superintendent cover-sheet, did not provide the revised statutes applicable, and did not include the witness statements to be used at the Hearing. This is the policy, they relied on the information, reasonably, as the evidence to being used against K███ to support the recommendation for expulsion for a possesses weapons under federal law violation;

b. Principal White recommended a simultaneous expulsion with a suspension for a specified number of days. The Expulsion Flow Sheet indicates that this is a due process violation that should warrant a dismissal;

c. After the meeting with Principal White on September 16, 2020, the Harrison-Williams Family learned that Defendants (independently or in concert) obtained an additional witness statement in an attempt to bolster the already issued recommendation for expulsion;

d. The recommendation for expulsion did not come from the Superintendent, as required by the Policy given to the Harrison-Williams Family the day before the Due Process Hearing. In the policies given to the Harrison-Williams Family by Defendants, the expulsion recommendation for a weapons-violation was to come from the superintendent, not the principal, and, as such, the Harrison-Family believed that they had a procedural due process defense prior to entering the Due Process Hearing, and reasonably relied on same, yet this argument went ignored by the Defendants at the Hearing and resulted in damages as a result of the Hearing Officer rejecting this defense;

e. The Harrison-Family received notice of the Due-Process hearing only 22.5 hours prior to the Hearing.

8.

These violations are all elements of procedural due process as outlined in the documents provided to the Harrison-Family and should have resulted in the entire case being dismissed, as stated by the JPS policies and procedures definition of "Due Process."



9.

Despite the numerous violations of law and JPS policies and representations that the proceedings against K███████ were not dismissed. Ms. Adams, astonishingly characterized these violations as mere "clerical errors" and stated that "quibbling" over them "will not go very far."

10.

The Harrison-Williams Family suffered damages from their justifiable reliance of the policies and procedures provided by Defendants because as they were not applied correctly or adequately. The resulting damages to the Harrison-Williams Family include but are not limited to the six-day suspension of K███████, a recommendation of social work assessment, and emotional damages.

**COUNT 6: Intentional Infliction of Emotional Distress,
or Alternatively Negligent Infliction of Emotional Distress
(Against All Defendants)**

1.

The Harrison-Williams Family reasserts the allegations of facts set forth hereinabove in Paragraphs 1 through 55.

2.

Plaintiff alleges that the actions of all Defendants herein collectively rise to the level of extreme and outrageous conduct, that the emotional distress suffered by the Harrison-Williams Family is severe, and that all Defendants intentionally desired to inflict severe emotional distress or should have known that severe emotional distress would be certain or substantially certain to result from their conduct which occurred over a period of days commencing on September 11, 2020, and is still on-going. Defendants actions caused the Harrison-Williams Family emotional distress, anxiety, humiliation, loss of enjoyment of life, and damage by violating their constitutional rights.

3.

Alternatively, Plaintiffs, the Harrison-Williams Family, alleges that actions of all Defendants, as pleaded herein, collectively was a cause-in-fact of the Harrison-Williams Family's emotional distress, anxiety, humiliation, loss of enjoyment of life, and violation of rights that Defendants owed a duty to the Harrison-Williams Family to prevent Defendant's intentional and negligent infliction of emotional distress upon them; and that blatantly breached

24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020



that duty causing the Harrison-Williams Family, emotional distress, anxiety, humiliation, loss of enjoyment of life, and loss of constitutional rights.

<center>4.</center>

Further, Principal White, upon information and belief, discussed the incident and obtained written statements from K███████ which humiliated him among his peers, when the statements were not necessary.

<center>**COUNT 7:**
**Negligence**
**School Board, Superintendent, Ms. Adams**</center>

<center>1.</center>

K███████ reasserts the allegations of facts set forth hereinabove in Paragraphs 1 through 55.

<center>2.</center>

The School Board is liable to Plaintiff for damages and injuries caused by their negligent acts and omissions, including but not limited to the following:

a.  Failure to train Teachers;

b.  Failure to train Principals;

c.  Failure to train Behavioral Interventionists;

d.  Failure to train Superintendents;

e.  Failure to train Hearing officers;

f.  Failure to Supervise application of policies and procedures;

g.  Failure to intervene and correct where a knowingly false charge has been asserted against a student that triggers automatic expulsion recommendations;

h.  Upon information and belief, failure to comply with LSA R.S. 17:416.8 and convene prior to the 2021 school year and create a discipline policy "review committee," especially given the new environment of Virtual Learning. It should be noted that two sets of policies are at issue in this case: Board Policy and Policies and Procedures for Students and Teachers. The former has not been updated since 2019 (as discovered on their website), and the latter was written in expectation of the 2019 school year.

<center>3.</center>

Superintendent Gray is liable to Plaintiff for damages and injuries caused by his negligent acts and omissions, including but not limited to the following:

<center>24</center>

a. Failure to train his appointed "designee;"

b. Failure to follow the Policies and Procedures of Jefferson Parish.

4.

Ms. Adams is liable to Plaintiff for damages and injuries caused by their negligent acts and omissions, including but not limited to the following:

a. Failure to properly advise;

b. Failure to allow a Neutral Hearing Officer and intentionally interfering with decision making of the Hearing Officer who was supposed to be the Neutral Hearing Officer;

c. Retaliating against K███████, by a continuous denial of his statutory and state and federal constitutional due process, in retaliation for the Harrison-Williams Family's speaking with the press;

d. Intentionally interfering with the entire process for a recommendation of expulsion for a weapons possession charge in a manner, which rendered it fundamentally unfair and denied him access to fair and independent decision makers.

## CONSTITUTIONAL CHALLENGES

1. Jefferson's Parish School Policies are facially unconstitutional as they are interpreted or as applied to virtual educational environments;

2. LSA R.S. 17:416 is unconstitutional facially and as applied to virtual learning environments and to the home because it captures constitutionally protected conduct and fails to satisfy constitutional standards regarding fundamental rights of privacy, parental independence, and fair notice;

3. LSA R.S. 17:416(C) is unconstitutional as interpreted and applied by the JPSB because it deprives students of procedural Due Process because it deprives students and parents of review by the School Board and the courts of serious and life-altering charges relative to possession of firearms, particular where those statutes are interpreted as applying to the home;

4. LSA R.S. 17:416, JPS "Procedures & Policies for Parents & Students" and JPS School Board Policies are unconstitutionally vague and overbroad to the extent they are applied to conduct occurring in a student's home and expose the parents and child to egregious civil consequences and criminal charges for constitutionally protected conduct;



24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020

5.   Applying LSA R.S. 17:416, JPS "Procedures & Policies for Parents & Students," or JPS
School Board "Dangerous Weapon" Policies to non-threatening, non-disruptive conduct
in a student's home also infringed the Harrison-William's Family's Right to Keep and
Bear Arms pursuant to Article 1, Section 11, of the Louisiana State Constitution and the
Second Amendment; their right to privacy and to be free from unwarranted government
intrusion in their home; and to control K█████'s upbringing free from unwarranted
government interference.

## DAMAGES

Plaintiff has suffered, and will continue to suffer, the following damages, injuries, and
losses as a direct and proximate result of Defendants violations of the Harrison-Williams' Family
rights:

a)  General Damages;

b)  Mental pain, suffering, anguish and embarrassment, humiliation and loss of self-esteem;

c)  Future counseling and tutoring;

d)  Lost Income;

e)  Legal expenses and other costs; and

f)  Other economic damages and losses as will be proven at trial.

## ADDITIONAL RELIEF

Plaintiffs request any other relief to which they may be entitled under law or equity,
including but not limited to:

a)  a Writ of Mandamus to issue requiring the Jefferson Parish School Board to conduct a
hearing regarding the decision of the hearing officer and to require the JPSB to provide
K█████ with all work he has missed during the period he was not allowed to receive
instruction;

b)  alternatively, to the extent such hearing is now futile, to grant *de novo* review of this
matter and provide any relief that may be proper under the circumstances.

## TRIAL BY JURY

The amount in controversy exceeds $50,000, and the Harrison-Williams Family is
entitled to and requests a trial by jury.

24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020

**WHEREFORE,** premises considered, Plaintiffs, K█████ H█████, Nyron Harrison, and Thelma Williams, pray that Defendants, the Jefferson Parish School Board, Dr. James Gray, Hearing Officer Terri, Joia Principal Cecily White, and Ms. Patricia Adams be served with this lawsuit and that judgment be issued against Defendants for the Additional Relief as stated above and an award for all damages sustained by the Harrison-Williams Family, including but not limited to for all amounts owed to them pursuant to the causes of action as stated herein, damage to their reputation, and economic damages relating thereto including loss of due process rights, and emotional distress, anxiety, humiliation, loss of enjoyment of life, penalties, costs, and attorney's fees.

RESPECTFULLY SUBMITTED:

Chelsea B. Cusimano, La. Bar No. 34857
Douglas R. Kraus, La. Bar No. 26668
Susannah C. McKinney, La. Bar No. 24349
*Brener & Kraus, LLC*
3460 Magazine Street
New Orleans, Louisiana 70115
Telephone: (504) 302-7802
*dkraus@brenerlawfirm.com*
*smckinney@brenerlawfirm.com*
*cbcusimano@brenerlawfirm.com*
*Attorneys for Nyron Harrison, Thelma Williams, and K*█████ *H*█████

**_PLEASE SERVE_**:

Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Dr. James Gray
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Ms. Patricia Adams
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Ms. Cecily White
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Ms. Terri Joia
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020

Attorney General Jeff Landry
Louisiana Department of Justice
1885 North Third Street
Baton Rouge, Louisiana 70808



24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020



# Louisiana Department of Education School Behavior Report

In accordance with R.S. 17:416(A), the purpose of this report is to inform parents/guardians of a behavioral incident on the school campus, in the classroom, cafeteria, gymnasium, auditorium or elsewhere at school or during school-related activities and of subsequent disciplinary action taken by school officials. Because this or other incidents may jeopardize the safety, well-being or education of other students, parents are urged to discuss the incident and possible implications with the student to prevent further occurances.

To the Parents/Guardians of: **K___ H___**      Phone: ___(___)___      Grade/Section: ___04___
Name of Teacher/Staff: **LESLIE WILLIAMS**      Room Number/Location: ___233___
Name of Principal: **CECILY WHITE**      School: __088__   Regular ●  Special ○   504 ○
Date of Incident: __09/11/2020__   Time: __1157__   Location of Incident: __14 01 Classroom and Other__   Ref# __1__
Time code: **02 During Class**      Possible Motivation: _____
Related Influences: _____      Bias Motivation: _____
Others Involved: _____      Medical Treatment: ○      Serious Bodily Injury: ○
Nature of
**13  Possesses weapons prohibited under federal law**      _____
                                                            _____
**Remarks: Please See Attachment**

---

### ACTION TAKEN BY TEACHER OR OTHER SCHOOL EMPLOYEE

The student named above is hereby reported for inappropriate behavior as indicated in this report. This is behavior referral #1 for the student. I have taken the following action:

**06   Referred to office (Major)**      _____

Parental Contact On: _____2020-09-11_____      Conference Date: _____
Phone Call ●   Letter ○      Parent ○   Student ○
Recommendations: As per JPPSS policy

*Leslie Williams Johnson*      ___09/14/2020___
Signature of Employee          Date

### ACTION TAKEN BY SCHOOL ADMINISTRATION

The student named above is hereby reported for inappropriate behavior as indicated in this report. This student has 1 cumulative behavioral referral(s). I have taken the following action (s):

**09   002 Out of school suspension     SUSPENSION BEGINS: 2020-09-16   STUDENT RETURNS: 2020-09-29**
**29   001 Expulsion Recommendation**
_____
_____

**Other: Please See Attachment**

SIS Primary Infraction/Reason Code: __13__      *Cecily White*      ___09/14/2020___
                                                 Signature of Disciplinarian   Date

### ADDITIONAL ADMINISTRATIVE ACTION

Decision:
Start Date: _____      End Date: _____
SIS Incident:    13 A Possesses weapons prohibited under federal law

_____          _____          _____
(Signature of Student)          (Signature of Parent/Guardian)          (Current Date)

*Check appropriate blocks as copies of the document are supplied:*
☐ Parent/Guardian     ☐ School's Pupil File     ☐ Employee Filing This     ☐ Principal
NOTE: The principal shall return a completed copy of this form to the staff member who initiated the referral WITHIN 48 HOURS (excluding non-work days) of the time it was submitted to the principal.          Create Date: 09/14/2020
**Attachments: Provide a copy of the classroom minor tracking form, behavior intervention plan and data, or applicable intervention information.

EXHIBIT A



# Louisiana Department of Education School Behavior Report

Name of Student: _____ K███ H███████ ____ Phone: _____ () _____ Grade/Section: __04__

Date of Incident: __09/11/2020__ Time: __1157__ Location of Incident: __14 01 Classroom and Other__ Ref# __1__

Nature of
__13   Possesses weapons prohibited under federal law__ _____

_____   _____

Other: K████ presented an weapon that appeared to be a rifle/shotgun during his Google Meets classroom session. This is violation of weapons in the classroom setting and a violation of internet usage policy.  He will be recommend for expulsion as per JPPSS policy.

**NOTE:**  The principal shall return a completed copy of this form to the staff member who initiated the referral WITHIN 48 HOURS (excluding non-work days) of the time it was submitted to the principal.

**Attachments:  Provide a copy of the classroom minor tracking form, behavior intervention plan and data, or other applicable intervention information.

24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020

EXHIBIT A



## Louisiana Department of Education School Behavior Report

| | | | |
|---|---|---|---|
| **Name of Student:** K████ H████ | **Phone:** () | **Grade/Section:** 04 | |

**Date of incident:** 09/11/2020   **Time:** 1157   **Location of incident:** 14 01 Classroom and Other   **Ref#** 1

**Nature of**

13  **Possesses weapons prohibited under federal law**

**Remarks:** As the Social Studies virtual class was in session, the student K████ H████ left his seat (at home) momentarily, out of view of the teacher. When the student returned, he had what appeared to be a full-sized rifle in his possession. He placed it on the side of his chair so that we could only see the barrel. I immediately called the student's name to ask him what was he doing with a rifle and to have him remove it from the view of the other students. I called his name a few times. He did not reply. The student had muted not just his voice but appeared to have the volume on his computer as well so that he would not be disturbed as he took his ELA diagnostic assessment.

I called his name again, but shortly thereafter, the student was disconnected from the screen due to internet issues. At this time I contacted Principal White to inform her of what had just happened. Mrs. White immediately sent the behavior interventionist to my room to investigate the matter. I gave a statement, then the behavior interventionist left my room.

At 12:39 pm, the student's mother called my cell phone to ask about what happened. [Apparently the parents could not be reached by the interventionist, so the student's emergency contact (grandfather) was called. Once the parent received the message, the mother called my cell phone to determine what was going on]. I explained to her what occurred. The mother said what I thought was a rifle was actually a BB gun. I told her I reported the incident and that someone from the school is trying to contact her.

As I went to give the parent's phone number to Mrs. White, the mother called my cell phone again at 12:51 so that I could explain to the student's father what had occurred. The father had concerns about his son's action, as well as concerns about privacy within his home and virtual learning.   As I was completing my conversation with the father, the behavior intervention arrived and was able to have a conversation with the student's father.

*NOTE: The principal shall return a completed copy of this form to the staff member who initiated the referral WITHIN 48 HOURS (excluding non-work days) of the time it was submitted to the principal.*

*\*\*Attachments: Provide a copy of the classroom minor tracking form, behavior intervention plan and data, or other applicable intervention information.*

24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020

EXHIBIT A





**District Affairs Office**

## Expulsion/Change of Placement Recommendation Protocol

**Incident (School) (Day 1)**
- Ensure that a detailed and accurate referral is entered into JCampus.
- Provide due process to the student (before the student leaves campus if at all possible or make arrangements to obtain a statement). Hearing Officers cannot uphold recommendations where Due Process has not been afforded to the student.
- Conduct and complete the investigation. (within 24 -48 hours)

**Principal Makes the Recommendation for Expulsion or Change of Placement**
- Suspend Recommendation for Expulsion document is generated. The parent/student receives the document and the Due Process Rights.
    - If a student is being recommended for expulsion due to several (four or more) suspensions, the primary reason should be Habitual Violation of School Rules followed by the codes that identify the infraction(s).
    - The expulsion recommendation shall state the infractions that are automatic recommendation for expulsion (weapons, possession/distribution of drugs, serious bodily harm and other serious offences.)
    - Do NOT issue a suspension form for a specific number of days and recommend expulsion = DOUBLE JEOPARDY which automatically violates a student's Due Process.
    - If a SPED/504 student has been removed for 10 days, they have to remain in school until the hearing and MDR have been conducted.
    - If a SPED/504 student has not been removed for the 10 days, the student can be removed for a number of days that do NOT exceed the 10 days which must be written on the Recommendation for Expulsion form and explained to the parent as the hearing and the MDR must be scheduled and held.

- Complete the Recommendation for Expulsion/Change of Placement Cover Sheet (REQUIRED) and attach all requested documents. (Day 1 and no later than Day 3)
    - The JPS Cover Sheet must be the first document of the packet and filled out in its entirety. (Several schools are using past documents which are acceptable if they are an addition to the required cover sheet.)

24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020





**District Affairs Office**

- o  Expulsion Packet
  - ▪ Entry/Leave Package report (JCampus- dropdown menu on right side of the screen): check: Demographic Page, Attendance Current year, Current Grades, Discipline Current Year and Discipline Referral Detail)
  - ▪ Recommendation for Expulsion form – the principal must hold a conference with the parent (signed or unsigned (date of scheduled conference))
  - ▪ Student's Due Process and any other collected witness statements
  - o  Each student should be a separate document.
  - o  The document must be scanned and titled using the first initial and last name of the student (ie. J Doe).
- Scan and email the packet in its entirety to discipline@jpschools.org. Hearing Officers will not pick up packets.
- Upon receipt of the packet, the Principal will receive an email with dates/times options. The Principal responds with a 1st and 2nd preference or statement requesting another date.
- The Principal, Principal's Secretary, Executive Director of SPED Compliance and Hearing Officer will receive an appointment from the Office of Special Programs via Google calendar. The hearing appointment is also confirmed with the parent.
  - o  Principals should accept the appointment and the details of the hearing will be contained therein.

**Hearing**

The hearing will be held at 501 or the Emenes Bldg.

- The hearing is facilitated by one of the three Hearing Officers.
- The school official presents their case (reading of the referral and statements, provision of any other evidence gathered in the investigation).
- The student and parents are provided an opportunity to present their side and provide any evidence.
  - o  Remind the parent that they will be contacted with an appointment for the MDR, when applicable.
  - o  If a parent is a NO SHOW – the first time: the hearing will be rescheduled, the second NO SHOW - the hearing is held with the principal and Hearing Officer.

**Hearing Officer Renders a Decision**

- Hearing Officer notifies the Principal, Executive Director of SPED Compliance (SPED/504) and Parent of the decision via email/mail/phone.

24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020

EXHIBIT B



EXHIBIT B

# Expulsion/Change of Placement Protocol

 ## Incident **1**

 ## Expulsion Recommendation **2**

- Enter a detailed and accurate referral into JCampus
- Provide Due Process to the student
- Conduct and complete an investigation within 24-48 hours

- Generate "Expulsion Recommendation" document; parent receives document and Due Process rights; parent conference must be held with principal
- Do NOT issue suspension form for a specified number of days; this constitutes double jeopardy, which automatically violates the student's Due Process
- SPED/504 students may NOT be suspended from school more than 10 days either consecutively or cumulatively
- Complete and submit expulsion packet within 3 days of incident

## Expulsion Packet

 ## Hearings  **4**

 **3**

- The Office of Special Programs will coordinate hearings with the principal, hearing officer, and parent
- Expulsion hearings are held at either 501 or Emenes
- A parent with a valid reason may request to reschedule a hearing 24 hours prior
- Expulsion hearings will proceed in the absence of a parent and student unless a reschedule request has been made

- Expulsion packets must include all items indicated on the "Expulsion/Change of Placement Recommendation Cover Sheet"
- When there are multiple students, complete 1 packet for each student
- Scan and email the packet to discipline@jpschools.org
- Incomplete packets will be returned

 **5** ## Decisions

- The Hearing Officer notifies the principal, Office of Special Programs, Executive Director of SPED (when applicable), and parent of the decision via email, U. S. mail, phone
- The Hearing Officer determines one of the following:
  - ➢ Dismissed
  - ➢ Not Guilty
  - ➢ Guilty

- Dismissed
  - ➢ Failure of school to provide Due Process
  - ➢ Failure of school to provide complete documentation
- Not Guilty
  - ➢ Overturned, student is readmitted to school
- Guilty
  - ➢ Amended to OSS not to exceed 10 days; student is readmitted to school
  - ➢ Alternate Site (Extended) Suspension (11 to 45 days)
  - ➢ Alternate Site Expulsion (at least 1 complete semester)
  - ➢ Out-of-School Expulsion (drugs, firearms)





**Woodmere School**

CECILY WHITE
(504) 348-2410
09/16/2020

Parents of:
K████████ H██████████
3848 DEERCREEK LN
HARVEY, LA 70058

Dear Parents:

Referral #:1

This is to inform you that a disciplinary action has been taken with respect to K████████ H██████████

The specific problem area and/or incident is indicated on the referral form enclosed.  Please take the time to read it carefully and discuss it with your child.  We regret the action, but believe it to be fair and proper.

Please sign this form and have K████████ H██████████ return it to me as soon as possible.  Your signature certifies that you have been advised of corrective action, not that you necessarily agree with it.

_Thelma Williams_
Signature of Parent or Guardian

*ED gear*  *Software Drives Education*

24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020

EXHIBIT C



**Woodmere School**

**Expulsion Recommendation**

School: Woodmere School          Case #:   1          Referral Date:   2020-09-11

Referrals:   2          Suspensions(ISS):   0          Suspensions(OSS):   1

To the Parents/Guardians of:
K████ H████████
3848 DEERCREEK LN
HARVEY, LA 70058

Telephone:   ()
Birthdate:   06/14/2011
Sex:   F   Race   1   Grade:   04

(Date of Contact with Parent by          (Date of hearing with parent by
Principal and/or S.C.W.A.)               superintendent and/or principal)

The student is subject to the following discipline procedures:
Regular Education   X

---

Your child has been suspended from Woodmere School beginning 2020-09-16 pending an expulsion hearing for the following:

Reasons:          13   Possesses weapons prohibited under federal law

Remarks: As the Social Studies virtual class was in session, the student K████ H████ left his seat (at home) momentarily, out of view of the teacher. When the student returned, he had what appeared to be a full-sized rifle in his possession. He placed it on the side of his chair so that we could only see the barrel. I immediately called the student's name to ask him what was he doing with a rifle and to have him remove it from the view of the other students. I called his name a few times. He did not reply. The student had muted not just his voice but appeared to have the

A Central Office or SCWA officer will contact you AS SOON AS POSSIBLE in order to schedule an expulsion hearing.

We regret that it has been necessary to take this disciplinary action.  If you desire further information concerning this matter, you may contact me at telephone no. 5043482410.  We are hopeful that our coordinated efforts will lead to a better understanding and a solution to the problem.

STATE LAW PROVIDES THAT A STUDENT MAY BE RECOMMENDED FOR EXPULSION AT ANY TIME FOR ANY SERIOUS VIOLATION OF SCHOOL REGULATIONS AND MAY BE RECOMMENDED FOR EXPULSION ON THE FOURTH SUSPENSION.

Other Comments: K████ presented an weapon that appeared to be a rifle/shotgun during his Google Meets classroom session. This is violation of weapons in the classroom setting and a violation of internet usage policy.  He will be recommend for expulsion as per JPPSS policy.

Sincerely,

*Cecily White* , Principal

Distribution: (1) Parent     (2) S.C.W.A.     (3) Superintendent's Office     (4) Principal's Office
(5) Supervisor of Special Education

*ED gear*  *Software Drives Education*

EXHIBIT C



# BRENER & KRAUS, LLC

3640 MAGAZINE ST.
NEW ORLEANS, LA 70115
P (504) 302-7802
F (504) 304-4759

September 21, 2020

Ms. Darvell Edwards
Executive Director of Special Programs
501 Manhattan Blvd | Harvey, LA  70058
Office: 504 - 349 - 7824
Darvell.edwards@jpschools.org

Re: Statement on Behalf of K███████ H█████

    As you are aware, our law firm represents K███████ H█████ and the Harrison Family in connection with the incident that occurred in his virtual classroom for Woodmere School on September 11, 2020. As the Harrison Family was not made aware of K███████'s Due Process Hearing until September 21, 2020, and the Hearing is scheduled for September 22, 2020, at 9:00 a.m., we would request that this Letter serve as an official statement on K███████ H█████'s behalf.

    On September 11, 2020, K███████ H█████ was participating in a virtual Social Studies classroom ELA diagnostic assessment (the "Test.") K███████ H█████ is one of five children in his household, and shares a room with two of his younger brothers. During the Test, K███████'s teacher was speaking loudly (either to other students, or as a result of not muting her microphone), so K█████ put his computer and volume on mute so he could concentrate on the Test. Further, it is a requirement that the students keep their computer on mute unless speaking. While three of the five Harrison children participate in Distance Learning at Woodmere (two are elsewhere in Jefferson Parish), they are not always in Distance Learning at the same time. The Harrison Family has advised me that this is the result of one child being on break, or "P.E.," while the other takes a class such as Social Studies, or there are days/times when the classroom shows up "dark," or the Distance Learning simply does not connect or work effectively.

    On the date and time in question, K███████ was taking the Test and his brother was also physically in the bedroom that they share. K█████i's brother either tripped or stepped on a BB Gun, and K█████ bent down (causing him to be off the screen as stated by his teacher), picked up the toy BB gun, and placed it next to him in his chair, or "by his side." This is corroborated by his teacher's statement. At this point, K█████i continued to take the Test. Presumably, it was the teacher's yelling that made the other students look at K█████i's screen, as K███████'s

LISA BRENER | 1954-2019          DOUGLAS R. KRAUS PARTNER | DKRAUS@BRENERLAWFIRM.COM

CHELSEA BRENER CUSIMANO PARTNER | CBCUSIMANO@BRENERLAWFIRM.COM          SUSANNAH C. MCKINNEY PARTNER | SMCKINNEY@BRENERLAWFIRM.COM

24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020

EXHIBIT D



computer was on mute while he concentrated on finishing the Test. The screen then went off, and Woodmere School is citing "internet issues." Notwithstanding the foregoing, the remaining Harrison child in the home (not the brother in their bedroom) taking a separate class was not having Internet issues.

This incident did not occur during an active learning session where the students were engaging with one another, nor did K███████ make any threats with the BB gun, or point it at any student or the camera. In fact, the two student statements seem to indicate that the K███████ had it by his side, as stated by K███████, consistently. Immediately following the incident, the Harrison family became actively involved in the investigation. While I am not clear as to why this is in the documents submitted for the Due Process Hearing, the "six on your side" comment was undoubtedly a result of Mr. Harrison's anger for Woodmere recommending that his nine year old son be expelled for taking a BB gun out of his younger brother's way and placing it somewhere he thought was safe while he finished the Test.

Quickly, I have reviewed the Policies and Procedures of Jefferson Parish Schools sent to me today and, in particular, the provision related to bringing weapons to a school and a recommendation for expulsion as to same. I simply cannot make the connection to what occurred in K███████'s bedroom (in the privacy of his own home) while he was taking a Distance Learning test and the Jefferson Parish School policy for expulsion regarding weapons and "weapons prohibited under federal law." I have requested that Jefferson Parish Schools provide me with its updated policies and procedures related to expulsion and Distance Learning, but it appears that such documents do not exist at this time.

Finally, it should be noted that Woodmere's paperwork indicates that he was recommended for suspension on September 16, 2020, but K███████ has been suspended from school since the date of the incident and been unable to further his education as a result of same.

It is very important to the Harrison Family that this matter be put to rest and that K███████ be allowed to continue in the Fourth grade at Woodmere Elementary. This child has already been put through enough and has been suffering the consequences of this unfortunate incident since this date. Woodmere School has asked several nine year olds to write statements about seeing their classmate having a BB gun by his side during the Test. Imagine what environment these children are already living in, and now imagine what ███████ has experienced as a result of the implementation of Distance Learning without policies and procedures to protect these children from the potential failure of same.

If you have any questions or concerns prior to the hearing please do not hesitate to contact me directly at (504)430-9261.

Thank you,

*Chelsea B. Cusimano*

Chelsea Brener Cusimano

2

24th JDC Civil Fax Filed:10/02/2020 14:56:29 Case:810813 Div:M ID:47020

EXHIBIT D





**State of Louisiana**
DEPARTMENT OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL
P.O. BOX 94005
BATON ROUGE
70804-9005

Jeff Landry
Attorney General

September 29, 2020

Dr. Cade Brumley
State Superintendent of Education
Louisiana Department of Education
1201 North Third Street
Baton Rouge, LA 70802

Ms. Sandy Holloway
President
Louisiana Board of Elementary and Secondary Education
1201 North Third Street
Baton Rouge, LA 70802

Dear Superintendent Brumley and President Holloway:

COVID-19 has, in many ways, put us in uncharted waters. Schools are facing several issues that may expose the limits on application of usual and customary school operations. I write to bring your attention to the process utilized by some school systems for the expulsion of students.

I have been made aware that K████ H████, a fourth grade student at Woodmere Elementary in Jefferson Parish, has been recommended for expulsion due to "possession of a weapon prohibited under federal law." My office has opened an investigation into the handling of this matter. Pursuant to our investigation, we have discovered that several other students are experiencing the same treatment by this and other school systems.

Setting aside other constitutional concerns, I would like to direct you to a specific issue: whether parents and their child have a right to appeal to the School Board and, thereafter, seek judicial review of a decision by the Superintendent when the child has been recommended for expulsion. We believe the law is clear and unambiguous; they do.

The facts, as we appreciate them so far, tell us that K████ and at least two other children were "recommended for expulsion" based upon allegations of conduct that occurred at their homes (in at least three cases, the children were in their bedrooms) while testing or watching school instruction via the "Zoom" platform. In all three cases, the children were automatically recommended for expulsion by their school principals based upon (an incorrect reading of) existing laws. The parents and the children in at least two of these cases requested and obtained a "due process" hearing with the district superintendent, who converted the ultimate discipline to a period

EXHIBIT E



Page 2 – AG Landry to Supt. Brumley and Pres. Holloway

of suspension (and added other conditions). Because the children were not expelled, the district has interpreted State law as rendering the Superintendent's decision as "final" and providing no right to appeal the Superintendent's decision to the School Board. This is an incorrect interpretation of Louisiana Revised Statutes 17:416(C)(1). Also troubling is the misreading of the plain text of the law by the Chief Legal Counsel for the Jefferson Parish School Board who has cited to Board *policy* as authority for *superseding* rights that are unambiguously provided in statute. That too is wrong.

Louisiana Revised Statutes 17:416(C)(1) plainly and clearly sets forth specific appeal rights afforded to the child and his parents upon "the *recommendation* by a principal for the expulsion of any student . . . ."[1] Once that recommendation is made, the child is statutorily *vested* with the full complement of appeal rights listed by statute.[2] This is hornbook constitutional law on procedural due process. Thus, it is not proper to divest this student and his family (or any others) of vested appeal rights simply because the discipline on the back ends in a suspension. In accordance with State law, an appeal to the Board, with the subsequent right to judicial review, is afforded to the parents and student once the principal recommended expulsion.

Please note that the systematic violation of student constitutional rights could also have implications for school systems' eligibility for state and federal funds. Should you have any questions, please do not hesitate to contact my office.

For Louisiana,

Jeff Landry
Attorney General

cc:   BESE Board Members
      Louisiana School Superintendents
      Chairmen of Louisiana School Boards

---

[1] This is consistent with the United States Supreme Court's recognition that the child has a property interest in mandatory education and a liberty interest in his or her reputation and honor. See Goss v. Lopez, 418 U.S. 565 (1975).
[2] The right to due process is conferred not by legislative grace but by constitutional guarantee. *See Lapointe v. Vermillion Par. Sch. Bd.,* 2015-0432 at 8 (La. 6/30/15), 173 So.3d 1152, citing *City of Cleveland Bd. Of Educ. v. Loudermill,* 470 U.S. 532, 541 (1985), quoting *Arnett v. Kennedy,* 416 U.S. 134, 167 (1974).

EXHIBIT E

24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO.: 810-813                                        DIVISION "M"

NYRON HARRISON, THELMA WILLIAMS, INDIVIDUALLY AND O/B/O THEIR
MINOR CHILD, K██████H██████

VERSUS

JEFFERSON PARISH SCHOOL BOARD, DR. JAMES GRAY,
CECILY WHITE, TERRI JOIA, AND PATRICIA ADAMS

FILED _____

_____
DEPUTY CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFFS' FIRST SUPPLEMENTAL AND AMENDING PETITION

**NOW INTO COURT**, through undersigned counsel, comes Nyron Harrison ("Mr. Harrison") and Thelma Williams ("Ms. Williams"), on behalf of themselves and their minor child K██████ H██████ ("K██████") (sometimes collectively referred to as the "Harrison-Williams Family"), who supplement and amend their original Petition for Judicial Review, and Alternatively, A Writ of Mandamus, Petition for Damages and Request for Jury Trial, which was filed on October 2, 2020 (hereinafter, the "Petition"), and citations issued on Defendants on October 7, 2020, as follows:

1.

Plaintiffs hereby incorporate Paragraphs 1-55 of their original Petition, as if fully stated herein.

2.

Plaintiffs desire to supplement and amend their original Petition to state an additional count of First Amendment Retaliation, pursuant to the First Amendment of the United States Constitution, and the First Amendment of the Constitution of the State of Louisiana, by adding Count eight (8) as follows:

Additionally, Plaintiffs would like to add the following facts to the Petition:

**56.**

In addition to the facts stated in the Petition regarding the meeting that was held on September 16, 2020 with Principal White, Mr. Harrison, and Ms. Thelma Williams, it has been brought to the Harrison Williams Family attention that a new statement was made and placed into

24th JDC Civil Fax Filed:10/16/2020 14:12:27 Case:810813 Div:M ID:47375

the file following that meeting, on September 17, 2020. The statement was made by Behavior Interventionist, Ms. Trepangier, and indicates that the Harrison Williams Family (parents only) came to meet with [Principal White] on the afternoon of September 16, 2020. Following the end of that meeting, Mr. Harrison, who left upset, told Principal White (and presumably Ms. Trepangier) that he would bring "Six on Your Side,"[1] to the Expulsion hearing.

<div align="center">57.</div>

By correspondence dated October 13, 2020, the Harrison Williams Family requested an unencrypted version of the Due Process Hearing that took place on September 22, 2020. While Ms. Adams originally advised the Harrison Williams Family that the video would come with the Hearing Officer Decision Letter, the Harrison Williams Family did not receive that video until days later. The video is encrypted to the Harrison Williams Family counsel's computer, and counsel is unable to use this video as a result of same. When the Harrison Williams Family requested an unencrypted video in a "sharable format" from the Defendants, on October 13, 2020, the Harrison Williams Family were simply "denied" this request by the Jefferson Parish School Board, presumably through all Defendants.

<div align="center">

**Count 8**
**First Amendment Retaliation**
**Federal and State Constitutional Claims**

</div>

All of the allegations of the Petition in Paragraphs 1 through 57 are incorporated herein by reference as if fully set forth herein.

<div align="center">1.</div>

Defendants acted under color of state law.

<div align="center">2.</div>

The Harrison Williams Family engaged in constitutionally protected activity (freedom of speech to discuss this case), and every time the Harrison Williams Family mentioned taking this case public, and actually took this case public, the Defendants acted with more and more hostility. For example, the Defendants placed a statement about this in K███████ s file for a neutral Hearing Officer to review following a Parent-Principal Pre-Due Process Hearing, and Defendant, Ms. Adams, wrote the Harrison Williams Family an email expressing her anger on September 25, 2020, as stated more fully herein.   As such, it can only lead a reasonable person to conclude that

---

[1] This is the popular News Media outlet (WDSU) in the New Orleans area.

Defendants' actions, in denying K███████ Due Process in his Due Process hearing, thereafter, and all actions as stated in the Petition to date, are the result of the Harrison Williams Family engaging in the aforementioned protected activity (First Amendment Free Speech).

2.

The Harrison Williams Family received anything but Due Process in the days leading up to and during the Due Process Hearing on September 22, 2020. Following the determination to convert K██████'s expulsion to a six-day suspension with social worker assessment, the Harrison Williams Family consistently requested relief for K██████ H██████ and Board review of the recommendation for expulsion. The Harrison Williams Family did this on multiple occasions.

3.

The Harrison Williams Family consistently urged to all Defendants that K██████ H██████s Due Process had been violated and requested that the Defendants reconsider their decision to suspend K███████ and refer him to a social work assessment.

4.

By e-mail dated September 25, 2020, specifically, Harrison Williams Family counsel identified numerous Due Process violations that had occurred to K██████ H██████ from the date of the incident on September 11, 2020, until the date of their final request for relief from Defendants. This e-mail was sent to Ms. Adams, the School Board, and Superintendent Gray.

5.

As indicated in Paragraph 54 of the Petition, Ms. Adams responded privately to the Harrison Williams Family Counsel as follows:

> Quibbling about clerical errors in paperwork will not go very far when the student has received far more process than is due under such circumstances... K██████ received more than sufficient process to satisfy the requirements of the state and federal law.
>
> **I cannot, and will not, recommend Board Review of K██████'s suspension, nor will I recommend expungement of his record because the facts are simply not as you have presented them** *in your similarly unprofessional efforts to litigate this matter in the press.*

6.

As a result of the allegations made in Paragraphs 1 through 55 of the Complaint, and the facts, as amended in Paragraph 56 & 57, the Harrison Williams Family believes and therefore submits that all Defendants have retaliated against the Harrison Williams Family, from the very beginning, in failing to afford him Due Process, as of result of Mr. Harrison informing the

24th JDC Civil Fax Filed:10/16/2020 14:12:27 Case:810813 Div:M ID:47375

Defendants that he would bring the media to K████s Expulsion Hearing, and for speaking publicly about their case on numerous media platforms since the Hearing Officer Decision became "final."

7.

Defendant failed to provide the Harrison Williams Family with Due Process prior to or at the Due Process Hearing, with a second level review, or act with the discretionary authority entitled to it, in reviewing the decision to suspend K████ H████ for six (6) days and recommending a social work referral either wholly, or in part, as a result of it being chagrined with the fact that the Harrison Williams Family spoke to the media about the facts of this case. This is evidenced by Ms. Adams' letter dated September 25, as well as the actions of the Defendants from the moment Mr. Harrison informed Defendants he would be "bringing six on your side" to date. If they did not feel that Mr. Harrison's media commentary was significant, why make an additional statement and place it in K████s student records prior to his Due Process Hearing, but after a required meeting with the Principal?

8.

Now, as of October 13, 2020, Defendants have denied the Harrison Williams Family request to receive an un-encrypted copy of the Due Process Hearing that took place on September 22, 2020, and believe that they are being denied same as a result of their expressed desire to communicate the facts of this Hearing to third-parties, including the Louisiana Legislature, and to speak freely and openly about the events that occurred therein. As it stands, the video is encrypted to Harrison Williams Family Counsel's Law firm computer, and not available in a format that is transferrable to third parties, including Mr. Harrison and Ms. Williams, themselves. When they requested a regular copy of the video, the Harrison Williams Family were denied.

9.

The Harrison Williams Family believes that had Mr. Harrison not informed Defendants about "Six on Your Side," and had the Plaintiffs not spoken to the media about the facts of this case, the School Board would have acted reasonably in re-reviewing K████s disciplinary documentation and granted him the Due Process to which he was entitled both before, during, and after the Due Process Hearing. Further, the Harrison Williams Family submit that the punishment imposed on K████ was harsher as a result of Mr. Harrison's statement about "Six on Your

Side," as well as the media attention that K███████s case received on both a local and national level.

<div align="center">10.</div>

The Harrison Williams Family submits that Defendants would not have taken such an egregious action against K█████ but for this conduct. In a similar matter, in the Jefferson Parish School System, an older child allegedly "handled" a BB gun and showed it on screen "to his peers," according to a Jefferson Parish School System statement. This child received a three-day suspension (not six).

<div align="center">11.</div>

If the Harrison Williams Family prevails on its First Amendment Retaliation Claim, the Harrison Williams Family is entitled to punitive damages as a result of this First Amendment Retaliation Claim and prays for same in the Prayer for Relief.

**WHEREFORE**, premises considered, Plaintiffs, the Harrison Williams Family, prays, that after trial by jury, there be judgment herein, in Plaintiffs' favor and against Defendants, for all damages that Plaintiffs have sustained as a result of the actions described in the original Petition and in this First Amending Petition, together with the damages stated therein, which include, but are not limited to, attorney fees, costs, judicial interest, general damages, statutory damages, and now, **punitive damages**, and all other legal and equitable relief to which they may be entitled.

<div style="margin-left:40%;">

Respectfully submitted,
**Brener & Kraus, LLC**

_____
Chelsea B. Cusimano, Bar #34857
Douglas R. Kraus, Bar #26668
Susannah C. McKinney, Bar #24349
3640 Magazine Street
New Orleans, LA 70115
(504) 302-7802 Telephone
(504) 304-4759 Fax
cbcusimano@brenerlawfirm.com
dkraus@brenerlawfirm.com
smckinney@brenerlawfirm.com
_Attorneys for Nyron Harrison,_
_Thelma Williams, and K██████ H█_

</div>

FILED FOR RECORD 10/05/2020 14:37:39
- Morgan E. Haquin, DY CLERK
JEFFERSON PARISH, LA

**24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

NO.: 810-813                                        DIVISION "M"

**NYRON HARRISON, THELMA WILLIAMS, INDIVIDUALLY AND O/B/O THEIR
MINOR CHILD, K▮▮▮▮ H▮▮▮▮**

**VERSUS**

**JEFFERSON PARISH SCHOOL BOARD, DR. JAMES GRAY,
CECILY WHITE, TERRI JOIA, AND PATRICIA ADAMS**

FILED _____        _____

                                                    **DEPUTY CLERK**

*************************************************************************

**MOTION FOR TEMPORARY RESTRAINING ORDER
WITH INCORPORATED MEMORANDUM,
PETITION FOR PRELIMINARY AND
PERMANENT INJUCTIVE RELIEF AND DAMAGES**

NOW INTO COURT, through undersigned counsel, comes Nyron Harrison ("Mr.

Harrison") and Thelma Williams ("Ms. Williams"), on behalf of themselves and their minor child

K▮▮▮ H▮▮▮▮[1] ("K▮▮▮▮▮") (sometimes collectively referred to as the "Harrison-Williams

Family"), both individuals of the age of majority, residents of and domiciled in Jefferson Parish,

State of Louisiana, who represent:

1.

K▮▮▮▮ age nine (9), is in the Fourth Grade at Woodmere Elementary School

("Woodmere School"). Plaintiffs Mr. Harrison and Ms. Williams are K▮▮▮s parents.

(collectively, all three Plaintiffs are the "Harrison-Williams Family.")

2.

The Harrison-Williams Family directs this Honorable Court to all of the factual allegations

made in the Petition for Judicial Review, And Alternatively, A Writ of Mandamus. Petition for

Damages and Request for Jury Trial," (hereinafter, the "Petition") filed on October 2, 2020.

Specifically, the facts as alleged in Paragraphs 1 through 55 of the Petition.

3.

Notwithstanding the foregoing, the Harrison-Williams Family summarizes the pertinent

facts for this Court as follows:

---

[1] In this case, the child's name is already out in the public, and the Harrison-Williams Family has
made the decision to publically defend their Due Process rights so this unprecedented matter
does not occur to another family. *Cf. Washington Post v. Robinson*, 935 F.2d 282 (D.C. Cir.
1991) (rejecting sealing of information that had already been reported in the press).

The Harrison-Williams Family is a family of seven (7), living in a three-bedroom home. K███ shares his bedroom with his two (2) younger brothers. Of the five Harrison-William's Family children, three receive virtual instruction from Woodmere School. On September 11, 2020, while finishing an ELA diagnostic assessment (the "Test") in his bedroom, with his computer speaker and sound on mute, K█████'s younger brother, age eight (8), came into their shared bedroom while on a break from a Physical Education "class", and tripped over a Daisy BB gun. K█████ acting instinctively and immediately, picked up the Daisy BB gun and moved it out of his brother's way, and continued about taking the Test. K█████ was unaware that this action could be seen on camera by his teacher, nor did he intend for his BB gun to appear on camera. Before K█████ was given the opportunity to remove the BB gun from screen-view, or even understanding what has happening, K█████s computer screen went "dark." K█████ was kicked out of the class and the school is citing "internet" issues. To reiterate, K█████ did not point the BB gun at the screen, did not show the BB gun to the screen, or even say a word, as his computer was on mute and he was in the middle of a test. What happened thereafter is a complete injustice and the Harrison-William's Family submit that only a Temporary Restraining Order, Preliminary Injunction and Permanent Injunction thereafter can prevent any further injustice and injury which the Harrison-William's Family anticipates will be done by the Defendants.

4.

Following the BB gun "incident" (hereinafter, the "Incident"), and almost immediately K█████'s procedural due process rights were violated, pursuant to both the State of Louisiana Constitution and the United States Constitution. This is further outlined in the Petition, and requests that this Honorable Court reference same.

5.

K█████finally received a Due Process Hearing for the charge: "possesses weapons prohibited under federal law," on September 22, 2020. At the Hearing, which is transcribed into the facts of the Petition, K█████s counsel vehemently argued that K█████'s Due Process rights had been violated and pleaded with the Defendants to dismiss the charges against him as a result of these violations.

6.

The very next day, on Wednesday, September 22, 2020, at 10:22 a.m., the Harrsion-Williams Family received the Hearing Officer's decision letter. The title of the email from Mr.

Christopher Durden reads: "Hearing Officer's decision letter **on the recommendation of expulsion** for K███████ H██████ from Woodmere School." The Letter is attached as Exhibit "A" to this Motion.

<div align="center">7.</div>

The Hearing Officer Decision Letter is addressed to Ms. Thelma Williams and indicates that "based upon the evidence presented at the hearing conducted on September 22, 2020[2], it has been determined that [K██████] is guilty of **displaying a facsimile weapon while receiving virtual instruction** from Woodmere Elementary School," *i.e.*, a *different* purported offense under JPS policies from the purported "possesses weapons prohibited under federal law" offense that the Harrison-Williams Family was notified would be at issue at the Hearing.

<div align="center">8.</div>

The Hearing Officer Decision Letter then goes on to state that the "recommendation for expulsion is to be amended to disciplinary action of six (6) days out of school suspension **... and a social work assessment.**" Further, it should be noted that K██████ was not permitted receive to virtual instruction on September 11; he received no education at all, not even homework assignments, for nine days. Additionally, as of the date of the filing of this Petition, while K███████ is now receiving virtual instruction, he has not been provided with a packet of any work that he missed during his suspension.

<div align="center">9.</div>

While there has been no Social Work Assessment scheduled yet, the order of a Social Work Assessment is at issue in this litigation, as the Harrison-William's Family has no reason to believe that Defendants will not continue to retaliate against K██████ for his family speaking about their case to the press, and for pushing back on the decisions of Defendants to uphold his suspension, and demanding that the School Board grant an appeal of the decision of the Superintendent to issue K██████ a six (6) day suspension and social work assessment.

<div align="center">10.</div>

Upon receipt of the Hearing Officer Decision Letter, the Harrison-Williams Family's counsel requested an appeal:

---

[2] The amount of Due Process K██████ received in determining his guilt was a manner of hours, if not minutes as the letter is dated as the same date of the hearing itself. Notwithstanding the foregoing, the Harrison Family did not receive the decision until September 23, 2020, depriving the Minor Child of another day of education due to the Defendants' malicious delay.

<div align="center">3</div>

This is a violation of Jefferson Parish's policies and procedures provided to me, as well as a violation of K████s Due Process. A 6 day suspension [sic] for the rest of his schooling career that he will have to report to colleges and universities will ruin this child's life. We want to immediately appeal this decision, and I would request a copy of the Hearing.

Ms. Adams responded less than forty minutes later:

There is no right of appeal for a suspension. See La. R.S. 17:416.

<div align="center">11.</div>

Contrary to Ms. Adams's response, La. R.S. 17:416 provides, in relevant part:

(C)(1) Upon ***the recommendation by a principal for the expulsion of any student*** as authorized by Subsection B hereof, a hearing shall be conducted by the superintendent or by any other person so designated to do so by the superintendent to determine the facts of the case and make a finding of whether or not the student is guilty of conduct warranting a recommendation of expulsion. Upon the conclusion of the hearing and upon a finding that the student is guilty of conduct warranting expulsion, the superintendent, or his designee, shall determine whether such student shall be expelled from the school system or if other corrective or disciplinary action shall be taken.
<div align="center">* * * *</div>
(4) The parent or tutor of the pupil may, within five days after the decision is rendered, request the city or parish school board to review the findings of the superintendent or his designee at a time set by the school board; otherwise the decision of the superintendent shall be final. If requested, as herein provided, and after reviewing the findings of the superintendent or his designee, the school board may affirm, modify, or reverse the action previously taken.

(emphasis added). Likewise, the "Procedures and Policies for Parents and Students, given to the Harrison-William's Family in preparation for the Due Process Hearing stated that "[a] student **recommended for expulsion** shall have a right to a hearing and review by the School Board in accordance with Board Policy JDE."[3]

<div align="center">12.</div>

On September 24, 2020, the Harrison-Williams Family's counsel emailed the members of the School Board and Ms. Adams, again requesting review of the Hearing Officer's decision providing an analysis of La. R.S. 17:416, and noting that one of the School Board members had informed her that had only recently been made aware of K████s plight via email.

<div align="center">13.</div>

On September 25, 2020, Mr. Harrison emailed Tiffany Kuhn, President of the School Board:

**Good Afternoon. My Attorney has requested on two occasions now that the School Board take my son's Decision under appeal. Will you, as the School Board President, please consider my son's suspension for an appeal.**

---

[3] Pg. 11 of JPS Procedures and Policies for Parents and Teachers states this. There is a different set of policies and procedures to be applied by the Board, which can be found online.

<div align="center">4</div>

**Thank you,**
**Nyron Harrison**

14.

Thereafter, as reiterated in fact 50 of the Harrison Petition, Ms. Adams responded on behalf

of the School Board, again denying the request for appeal of the suspension and social work

assessment:

On September 25, 2020, Ms. Adams replied on behalf of President Kuhn. The email read:

Ms. Cusimano:

As noted below, Ms. Kuhn asked me to respond to Mr. Harrison's request for Board review
on her behalf. I would ask that you communicate the following response to your client.

Mr. Harrison:

In response to your request to appeal your son's suspension to the School Board, Board
President Tiffany Kuhn has asked me to provide an explanation as to why K█████'s
suspension is not subject to review by the School Board.

Board Policy JDE - Expulsion - states that a parent may request Board review of the
Superintendent's decision to expel a student. Board Policy JDE reflects state law, which
says that a student has a right to appeal an expulsion to the school board.

Board Policy JDD - Suspension - on the other hand, states that, with regard to a suspension,
the decision of the Superintendent shall be final. That is, there is no right of Board review
when a student is suspended. Again, the policy is consistent with state law which states
that, "The decision of the superintendent of schools on the merits of the case, as well as the
term of the suspension, shall be final, . . . ."
In other words, under Board Policy and state law, the decision of the Superintendent (or
his designee, in this case, Ms. Joia) to suspend a student is final and there is no right of
appeal to the School Board.

Because the School Board is bound to act in accordance with its own policies, the Board is
not able to grant your request to review the Superintendent's decision in your son's case.

Ms. Adams' response was incorrect with respect to state law and the Procedures & Policies for

Parents & Students given to the Harrison-Williams family, specifically with respect to the

definition of "due process" on page 11 thereof. The policy, as written, recognizes the difference

between a standard suspension and a "recommendation for expulsion."

15.

On September 29, 2020, the Attorney General of Louisiana issued a letter to BESE and the

Superintendent regarding children "recommended for expulsion" based upon allegations of

misconduct that occurred at their homes. The Attorney General explained that "the misreading of

the plain text of the law by the Chief Legal Counsel for the Jefferson Parish School Board who has

cited to Board policy as authority for superseding rights that are unambiguously provided in statute" is "wrong." A copy of that letter is attached to the Petition as Exhibit "E".

16.

On September 29, 2020, the Harrison-Williams Family's counsel and Mr. Harrison attached the Attorney General's Letter to an additional request that the School Board hear an appeal hearing for Ka'Mauri's suspension and the associated social work assessment. That request initially fell on deaf ears.

17.

Finally, on September 30, 2020, in one last effort to persuade Defendants to follow the law, the Harrison-Williams Family's counsel sent Ms. Adam and Ms. Kuhn a clip of the Hearing where Hearing Officer Joia advised the Harrison-Williams Family and their counsel that following the decision (which might be something other than expulsion) the family had five (5) days to appeal that decision. Shortly thereafter, Ms. Adams wrote back that Hearing Officer Joia "Ms. Joia is not an attorney," she "may have misstated the law," and "it would appear that [Attorney General] Landry made the same error." President Kuhn and Superintendent Gray were copied on Ms. Adams's email.

18.

Thereafter, in a last-ditch effort to avoid litigation, the Harrison-Williams Family's counsel responded to Ms. Adams, specifically identifying numerous statutory, procedural, and Due Process violations in the proceedings against K██████Ms. Adams responded without President Kuhn or Superintendent Gray, as follows:

> Quibbling about clerical errors in paperwork will not go very far when the student has received far more process than is due under such circumstances… K██████received more than sufficient process to satisfy the requirements of the state and federal law.

> I cannot, and will not, recommend Board Review of K██████'s suspension, nor will I recommend expungement of his record because the facts are simply not as you have presented them in your similarly unprofessional efforts to litigate this matter in the press.

19.

Defendants have yet to provide K██████with the work that he missed.

20.

In consideration of the aforementioned facts, and those stated in Paragraphs 1 through 55 of the Petition. Counsel for the Harrison-William's Family submits that the Harrison-Williams Family has every reason to believe that the Defendants have the intent to submit K██████to a social work assessment (which could involve DCFS), and even worse, report him to the District

Attorney for criminal charges. As such, the only way to maintain the status quo, which entails K███████ being back in virtual instruction, and without a Social Work Assessment, is to obtain a Temporary Restraining Order on Superintendent Gray and Hearing Officer Joia's decision to subject K██████ to a social work assessment. To subject this innocent child to further harm at the hands of government intrusion is unspeakable, and we would ask that this Court now intervene and issue a Temporary Restraining Order until such time a Preliminary Injunction Hearing may be had and a Permanent Injunction may be granted on the merits.

## ACTIONS TO BE ENJOINED

1.

The Harrison-William's Family seeks to enjoin all Defendants from requiring K█████ to undergo a social work assessment, as ordered by the Hearing Officer Decision Letter.

2.

The Harrison-William's Family seeks to enjoin all Defendants from making any referral to the District Attorney, should they decide to do so as they held K██████ to a weapons charge.

3.

The Harrison-William's Family seeks to enjoin Defendants from any further retaliatory behavior against K███████, or any members of the Harrison-William's Family.

## IRREPARABLE HARM

1.

The Harrison-William's Family reasserts the allegations as set forth herein, in Paragraphs 1 through 20 of this Motion, as well as facts 1 through 55 of the Petition.

2.

The Harrison-William's Family submits that a social work assessment, ordered by Defendants, will cause irreparable harm to the Harrison-William's Family, in addition to the harm and stigma that it will cause K██████ Currently, K██████ is back in virtual instruction, and to interfere with him getting back to normal by placing him under a social work assessment will interrupt the status quo.

3.

Deprivation of Constitutional Rights is a per se Irreparable Harm. As stated in the Petition, Defendants deprived K███████ of his Procedural Due Process Rights and the Harrison-Williams'

7

Family, collectively, of their Substantive Due Process Rights pursuant to both the Louisiana and United States Constrictions.

4.

Defendants are compounding the harm by maliciously demanding, and without justification, the Minor Child to submit to a social work assessment, which, presumably would result in opening the entire Harrison Family to intrusive government investigation.

5.

The Social Work Assessment will slander or defame the Harrison Family.

6.

Defendants interfered with and are continuing to interfere with the Harrison-William Family's right to direct K█████s upbringing free from government interference, including but not limited to by punishing K█████ for non-disruptive conduct in his own bedroom and by threatening a false and malicious referral to a social work assessment which would result in intrusion to the parent-child relationship which will cause irreparable harm.

"The liberty protected by the Due Process Clause of the United States Constitution includes the right of parents to establish a home and bring up children and to control the education of their own." *Troxell v. Granville*, 530 U.S. 57, 60 (2000).

7.

A six-day suspension remains on the Minor Child's permanent educational record. Defendants are refusing to grant the Minor Child a second level review by the School Board, and are refusing to expunge or clear his record. As such, this will follow the Minor Child throughout the rest of his education, thereby affecting which High School he is able to get into, and presumably which college he will get into. In the immediate term, this subjects the Minor Child to a heightened burden of damage, which would not doubt result from having to engage with a social worker.

8.

Regardless, the Harrison-Williams Family are "entitled to injunctive relief without the requisite showing of irreparable injury [because] the conduct sought to be restrained is unconstitutional or unlawful." *Jurisich v. Jenkins*, 749 So. 2d 597, 599 (La. 1999)(citing *S. Cent. Bell. Tel. Co. v. La. Pub. Serve. Comm'n*, 555 So 2.d 1370 (La. 1990)). As stated in the Petition, the Harrison-Williams Family have raised several constitutional challenges and served the Defendants as well as Attorney General, Jeff Landry.

## REQUEST FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTIVE RELIEF

1.

Injunctive relief in the forms of a temporary restraining order and a preliminary injunction is requested without bond.

2.

Pursuant to LSA-C.C.P. Art. 3601, [a]n injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law. Further, "[d]uring the pendency of an action for an injunction the court may issue a temporary restraining order..."

3.

Assuming that the Court has discretion to Order the Temporary Restraining Order, the Harrison-William's submit that they cannot afford to post a bond to protect their Constitutional Rights. No monetary loss can be suffered by the Defendants as a result of this Court's issuance of a Temporary Restraining Order.

4.

The Harrison-Williams Family request that the Defendants be enjoined for performing any social work assessment of the minor child.

5.

As previously stated, and in the Petition, the Harrison-Williams Family submits that their state and federal constitutional rights have been violated as a result of Defendants' actions.

6.

Further, as stated in the Petition the Harrison-Williams Family is seeking Judicial Review and, alternatively, a Writ of Mandamus to determine if Defendants unconstitutionally applied LSA R.S. 17:416(c) as applied to its decision to suspend K███████ and order a social work assessment following his Due Process Hearing for an expulsion recommendation based on the charge "possesses weapons prohibited by federal law."

7.

As stated in the previous section, the Harrison-Williams Family fear that imminent and irreparable harm would result should a Temporary Restraining Order not be issued until a hearing on a Preliminary Injunction may be had.

9

## PERMANENT INJUNCTIVE RELIEF

1.

After a hearing is had on the merits, and should permanent injunctive relief still be necessary, the Harrison-Williams submit that, thereafter, they are entitled to permanent injunctive relief prohibiting Defendants from mandating that K███████ undergo a social work assessment.

WHEREFORE, Plaintiffs, Nyron Harrison, Thelma Williams, and K██████ H██████ pray that:

1. A temporary restraining order, **without bond**, be issued herein, in accordance with law, against all Defendants prohibiting Defendants from performing a Social Work Assessment on K██████ H██████, or requesting that a third-party Agency do same;

2. That Defendants show cause within ten (10) days of the filing of this Motion as to why a Preliminary Injunction should not be issued prohibiting Defendants from causing, or referring, K██████ H██████ to undergo a Social Work Assessment; and

3. That in due course, a permanent injunction issue as prayed for above and a mandatory permanent injunction issue as requested; and

4. The Harrison-William's Family also request that it be awarded all costs and attorney's fees incurred for seeking the requested relief.

Respectfully submitted,
**Brener & Kraus, LLC**

Chelsea B. Cusimano, Bar #34857
Douglas R. Kraus, Bar #26668
Susannah C. McKinney, Bar #24349
3640 Magazine Street
New Orleans, LA 70115
(504) 302-7802 Telephone
(504) 304-4759 Fax
*cbcusimano@brenerlawfirm.com*
*dkraus@brenerlawfirm.com*
*smckinney@brenerlawfirm.com*
*Attorneys for Nyron Harrison,*
*Thelma Williams, and K██████ H██████*

## SERVICE INSTRUCTIONS ON THE NEXT PAGE

**<u>PLEASE SERVE:</u>**

Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Dr. James Gray
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Ms. Patricia Adams
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Ms. Cecily White
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Ms. Terri Joia
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Attorney General Jeff Landry
Louisiana Department of Justice
1885 North Third Street
Baton Rouge, Louisiana 70808

24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO.: 810-813                                   DIVISION "M"

NYRON HARRISON, THELMA WILLIAMS, INDIVIDUALLY AND O/B/O THEIR
MINOR CHILD, K█████ H█████

VERSUS

JEFFERSON PARISH SCHOOL BOARD, DR. JAMES GRAY,
CECILY WHITE, TERRI JOIA, AND PATRICIA ADAMS

FILED _____        _____
                                                  DEPUTY CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## RULE TO SHOW CAUSE PRELIMINARY INJUNCTION
## AND PERMANENT INJUNCTION

**CONSIDERING THE ABOVE AND FOREGOING,** Petition for Injunctive Relief,

Sworn Affidavit of Nyron Harrison, the applicable law and upon a clear finding that Plaintiffs will

suffer immediate and irreparable loss or damages before the adverse party or their attorney can be

heard in opposition:

**IT IS ORDERED, ADJUDGE AND DECREED** that Defendants, show cause on the

_____ day of October, 2020 at _____ o'clock ___.M. as to why a preliminary injunction and

permanent injunction should not be entered by this Honorable Court.

Signed on this _____ day of _____, 2020, in Gretna, Louisiana at

_____ o'clock ___. M.

                                     _____
                                     JUDGE, _____[1]

**PLEASE SERVE:**
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Dr. James Gray
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Ms. Patricia Adams
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

_____

[1] While counsel is aware of the new rules requiring the Judge be identified in the signature block, this case
has been assigned to Division M which currently has a Pro Temp Judge.

Ms. Cecily White
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Ms. Terri Joia
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Attorney General Jeff Landry
Louisiana Department of Justice
1885 North Third Street
Baton Rouge, Louisiana 70808

24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO.: 810-813                                DIVISION "M"

NYRON HARRISON, THELMA WILLIAMS, INDIVIDUALLY AND O/B/O THEIR
MINOR CHILD, K███████ H███████ \

VERSUS

JEFFERSON PARISH SCHOOL BOARD, DR. JAMES GRAY,
CECILY WHITE, TERRI JOIA, AND PATRICIA ADAMS

FILED _____       _____
                                       DEPUTY CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## GRANTING TEMPORARY RESTRAINING ORDER

**CONSIDERING THE ABOVE AND FOREGOING,** Petition for Injunctive Relief,

Sworn Affidavit of Nyron Harrison, and Temporary Restraining Order, the applicable law and

upon a clear finding that Plaintiffs will suffer immediate and irreparable loss or damages before

the adverse party or their attorney can be heard in opposition:

**IT IS ORDERED ADJUDGED AND DECREED THAT:**

1. A Temporary Restraining Order be issued and/or set Without Bond, or bond shall

   be waived, as no monetary loss can be suffered by Defendants in such instance; and

2. Jefferson Parish School Board, Dr. James Gray, Ms. Patricia Adams, Ms. Terri Joia,

   and Ms. Cecily White, are enjoined, restrained and prohibited from ordering a

   Social Work assessment of K███████ H███████

Signed on this _____ day of October, 2020, in Gretna, Louisiana at _____ o'clock ____. M.

                    _____
                    JUDGE, _____ [1]

**PLEASE SERVE:**
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Dr. James Gray
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Ms. Patricia Adams
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

_____

[1] While counsel is aware of the new rules requiring the Judge be identified in the signature block, this case
has been assigned to Division M which currently has a Pro Temp Judge.

Ms. Cecily White
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Ms. Terri Joia
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Attorney General Jeff Landry
Louisiana Department of Justice
1885 North Third Street
Baton Rouge, Louisiana 70808

FILED FOR RECORD 10/05/2020 14:37:39
Morgan E. Haquin, DY CLERK
JEFFERSON PARISH, LA
P1 S12

## 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

### STATE OF LOUISIANA

NO.: 810-813                                   DIVISION "M"

**NYRON HARRISON, THELMA WILLIAMS, INDIVIDUALLY AND O/B/O THEIR MINOR CHILD, K█████ H████**

### VERSUS

**JEFFERSON PARISH SCHOOL BOARD, DR. JAMES GRAY, CECILY WHITE, TERRI JOIA, AND PATRICIA ADAMS**

FILED _____        _____

                                              **DEPUTY CLERK**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### AFFIDAVIT OF NYRON HARRISON

**STATE OF LOUISIANA**

**PARISH OF JEFFERSON**

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified in and for the State of Louisiana, Parish of Orleans, personally came and appeared Nyron Harrison ("Affiant"), an individual of the age of majority, resident of and domiciled in Jefferson Parish, State of Louisiana, who after being duly sworn did state as follows:

1. This information is made upon Affiant's personal knowledge, information, and belief;
2. Affiant is the father to 9-year-old K█████ H████ ("K███████"), a fourth grade student at Woodmere Elementary School in the Jefferson Parish School System;
3. On September 11, 2020, Affiant was informed by Affiant's fiancé Thelma Williams, that K██████ was in trouble with his school for having a BB gun in his bedroom while taking a test during his virtual learning instruction;
4. Affiant immediately rushed home to try and understand what was happening;
5. Upon Affiant's arrival at his home, Affiant first spoke with K█████ who told his father, Affiant, that K██████s eight (8) year old brother came into their shared room and tripped over the BB gun;
6. K███████ then told his father that he picked up the BB gun and moved it out of his younger brother's way, and went back to taking his test. K█████ told Affiant that he saw his teacher trying to get his attention, and then the screen shut off;
7. Affiant then spoke with K█████'s teacher, Ms. Leslie Williams, who informed Affiant that K██████ was taking a test, went out of the picture for a minute, and then came back into the screen and moved the BB gun across the screen with only a portion of it still in the screen;
8. Affiant informed Ms. Leslie Williams that it was a BB gun, not a rifle, as she reported;
9. Leslie Williams informed Affiant that K████████ did not point the BB gun at the screen, nor did he say anything to the screen;
10. Leslie Williams further informed Affiant that K████████'s computer was on mute because he was in the middle of a test and was trying to concentrate on the test;
11. While talking to Ms. Williams, the Behavior Interventionist, Stacy Trepangier spoke to Affiant from Ms. William's phone. Affiant again informed Ms. Stacie Trepangier that what Ms. William's saw in K█████'s bedroom was a BB gun;
12. Ms. Stacie Trepangier then informed Affiant that K████████ would be facing expulsion. She then began to speak to Affiant about it being procedure and needing to go to the school board, as they were going to treat this as if he had a weapon or gun on campus;

EXHIBIT A

13. Affiant told Ms. Stacie Trepagnier that he felt this was an invasion of his privacy and that K█████ had not done anything wrong;

14. Immediately thereafter, Principal Cecily White got on the phone and spoke Affiant, and Affiant again told Principal White that it was a BB gun in K█████'s bedroom;

15. Principal White immediately responded that it did not matter, as this was the same thing as bringing a gun to school. Affiant informed Ms. White that it was not;

16. Ms. White informed Affiant that K████ was facing expulsion, and that he would immediately be placed on suspension pending the expulsion hearing;

17. At no point, on September 11, 2011, did any Principal and/or administrator from Woodmere Elementary, or Jefferson Parish School System, attempt to speak with K█████ to ask him about his version of events;

18. Thereafter, on the morning of September 16, 2020, Affiant was notified that Affiant and Thelma Williams, Affiant's fiancé, would have to have a meeting with Principal White to discuss K█████'s recommendation for expulsion;

19. As such, on September 16, 2020, Affiant and Thelma Williams had a meeting with Principal White to discuss K█████ s recommendation for expulsion;

20. At this meeting, Affiant was asked to present a statement from K████, to which Affiant declined;

21. Affiant informed Principal White that this was the privacy of his home, and that Affiant did not agree with K█████'s recommendation for expulsion;

22. Affiant and Thelma Williams received a few pieces of paper at this meeting. Specifically, Affiant and Thelma Williams received the Louisiana Behavior Report, the Expulsion Recommendation, and a piece of paper that Thelma Williams or Affiant was to sign to recognize the fact that K█████ would receive a Due Process Hearing for his expulsion;

23. Affiant received paperwork that had "possesses weapons prohibited by federal law," in multiple places;

24. Affiant did not receive any paperwork regarding Due Process or laws to be applied to K█████ at a Due Process Hearing;

25. Again at this meeting, Affiant told Principal White that Affiant felt his privacy rights had been violated;

26. Following this meeting, Affiant understood that K█████ could not return to school until a Due Process Hearing was had for his recommendation for expulsion for "possesses weapons prohibited by federal law";

27. On Monday, September 21, at 10:17 (with less than twenty-four hours notice) Affiant received a text message notifying Affiant that a Due Process Hearing would be held the next day, September 22, 2020, at 9:00 a.m. regarding K█████ s recommendation for expulsion;

28. This was the only form of notice that Affiant received prior to the Due Process hearing;

29. Thereafter, Affiant retained Brener & Kraus, L.L.C., to represent K█████ at his Due Process Hearing;

30. Affiant granted the Jefferson Parish School System the permission to release K█████ s personnel file to Chelsea Cusimano;

31. Upon receipt of K█████ s personnel file, Affiant, for the first time, saw witness statements of two of K█████'s classmates, as well as a statement given on September, 17, 2020 (after the meeting with Ms. White), that Affiant had not received in preparation for K█████'s Due Process meeting;

32. Affiant was present at the Due Process Hearing on September 22, 2020, as was Principal White, Ms. Leslie Williams, Ms. Stacie Trepagnier, Thelma Williams, and K█████'s counsel, Chelsea Cusimano. Also present was a Hearing Officer, Ms. Terri Joia;

33. Affiant watched Ms. Leslie Williams testify that K████ moved the BB gun from one place to the next and did not point it at the screen or say anything;

34. Affiant listened to Terri Joia ask if Affiant and his family received proper due process, and Affiant listened to K█████'s counsel state that they did not;

35. Affiant listened to and relied on Hearing Officer Joia's statements of the law that was to be applied and the fact that K█████ would have an opportunity to appeal this decision;

36. Affiant, in the Hearing, argued that K████'s Due Process violations had been violated;

37. Following the Due Process Hearing, on September 23, 2020, Affiant was notified by email, in a document titled "Hearing Officer's decision letter **on the recommendation**

EXHIBIT A

**of expulsion** for K████ H█████ from Woodmere School." A copy of the document Affiant was emailed is attached hereto as Exhibit "A."

38. Affiant learned that the Hearing Officer had decided to convert the charge to a new and different charge and give K█████ a six day suspension and a social work assessment;

39. Immediately thereafter, Affiant's counsel attempted to appeal the decision;

40. Affiant was informed that the decision was not appealable, as such Affiant emailed Tiffany Kuhn, the President of the School Board, and requested that the Jefferson Parish School Board grant K█████'s appeal;

41. President Tiffany Kuhn did not email Affiant back. Affiant later learned that President Tiffany Kuhn "responded" to Affiant from Jefferson Parish School System's counsel to Affiant's counsel;

42. Affiant submits that Affiant's family has already suffered a great deal as a result of the actions of Jefferson Parish School System;

43. Affiant submits that the Jefferson Parish School System has already invaded his family's right to privacy enough and that a social work assessment would not only harm Affiant's family, but his son K█████, even more;

44. Affiant believes, and therefore submits, that subjecting K█████ and potentially his entire family, to a social work assessment would cause substantial harm;

45. Affiant believes, and therefore submits, that subjecting K█████ to a social work assessment would stigmatize K█████ and Affiant's entire family;

46. Affiant believes, and therefore submits, that Jefferson Parish School System has infringed upon Affiant's rights, including but not limited to:
    a. Privacy; and
    b. To control Affiant's childrens' upbringing;

47. Affiant justifiably fears that the Jefferson Parish School System will further retaliate against K█████ and therefore feels that a Temporary Restraining Order is necessary for the following actions by Jefferson Parish School System:
    a. An order directing Jefferson Parish School System to refrain from submitting K█████ to a social work assessment;
    b. An order directing Jefferson Parish School System to refrain from referring the facts pertaining to K█████'s case to the District Attorney, as K█████ did not do anything illegal; and
    c. An order directing Jefferson Parish School System to refrain from retaliating against K█████ or any of Affiant's children while this matter is pending.

48. Affiant submits that a Temporary Restraining Order is the only way to maintain the status quo for Affiant's family and to stop the Jefferson Parish School System from inflicting any further harm onto the Harrison Family.

Thus done and signed this __5__ day of October, 2020.

_Affiant_, NYRON HARRISON

SWORN TO AND SUBSCRIBED before me on October __5__, 2020

Notary Public

Chelsea Cusimano
Printed Name

34857
Notary /LSBA #

My commission expires __for life__

CHELSEA BRENER CUSIM...
NOTARY PUBLIC NO. 135...
LA BAR NO. 34857
...ish of Orleans, State of Louisi...
My commission is issued for life

---

EXHIBIT A

**24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

NO.: 810-813                                              DIVISION "M"

**NYRON HARRISON, THELMA WILLIAMS, INDIVIDUALLY AND O/B/O THEIR
MINOR CHILD, K███████ H███████**

**VERSUS**

**JEFFERSON PARISH SCHOOL BOARD, DR. JAMES GRAY,
CECILY WHITE, TERRI JOIA, AND PATRICIA ADAMS**

FILED _____            _____
                                                                            **DEPUTY CLERK**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**RULE TO SHOW CAUSE PRELIMINARY INJUNCTION
AND PERMANENT INJUNCTION**

**CONSIDERING THE ABOVE AND FOREGOING,** Petition for Injunctive Relief,

Sworn Affidavit of Nyron Harrison, the applicable law and upon a clear finding that Plaintiffs will

suffer immediate and irreparable loss or damages before the adverse party or their attorney can be

heard in opposition:

**IT IS ORDERED, ADJUDGE AND DECREED** that Defendants, show cause on the

_4th_ day of _November_ 2020 at _9:00_ o'clock _A_.M. as to why a preliminary injunction and

permanent injunction should not be entered by this Honorable Court.

Signed on this _6th_ day of _October_____, 2020, in Gretna, Louisiana at

_9:00_ o'clock _A_. M.

_____
JUDGE, _Robert J. Burns, pro tempore_

**PLEASE SERVE:**
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Dr. James Gray
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Ms. Patricia Adams
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

---

[1] While counsel is aware of the new rules requiring the Judge be identified in the signature block, this case
has been assigned to Division M which currently has a Pro Temp Judge.

Ms. Cecily White
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Ms. Terri Joia
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Attorney General Jeff Landry
Louisiana Department of Justice
1885 North Third Street
Baton Rouge, Louisiana 70808

**24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

NO.: 810-813                                      DIVISION "M"

**NYRON HARRISON, THELMA WILLIAMS, INDIVIDUALLY AND O/B/O THEIR
MINOR CHILD, K█████ H██████ \**

**VERSUS**

**JEFFERSON PARISH SCHOOL BOARD, DR. JAMES GRAY,
CECILY WHITE, TERRI JOIA, AND PATRICIA ADAMS**

FILED _____            _____
                                                              **DEPUTY CLERK**

*******************************************************************************

## GRANTING TEMPORARY RESTRAINING ORDER

**CONSIDERING THE ABOVE AND FOREGOING,** Petition for Injunctive Relief,

Sworn Affidavit of Nyron Harrison, and Temporary Restraining Order, the applicable law and

upon a clear finding that Plaintiffs will suffer immediate and irreparable loss or damages before

the adverse party or their attorney can be heard in opposition:

**IT IS ORDERED ADJUDGED AND DECREED THAT**:

1. A Temporary Restraining Order be issued ~~and/or set~~ Without Bond, ~~or bond shall
   be waived~~, as no monetary loss can be suffered by Defendants in such instance; and

2. Jefferson Parish School Board, Dr. James Gray, Ms. Patricia Adams, Ms. Terri Joia,
   and Ms. Cecily White, are enjoined, restrained and prohibited from ordering a
   Social Work assessment of K█████ H████, pending the hearing on Nov. 4th 2020.

Signed on this ___6th___ day of October, 2020, in Gretna, Louisiana at __9:00__ o'clock __A__. M.

_____
JUDGE, _Robert J. Burns, pro tempore_

**PLEASE SERVE:**
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Dr. James Gray
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Ms. Patricia Adams
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

_____

[1] While counsel is aware of the new rules requiring the Judge be identified in the signature block, this case
has been assigned to Division M which currently has a Pro Temp Judge.

Ms. Cecily White
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Ms. Terri Joia
Jefferson Parish School Board
501 Manhattan Boulevard
Harvey, Louisiana 70058

Attorney General Jeff Landry
Louisiana Department of Justice
1885 North Third Street
Baton Rouge, Louisiana 70808