## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**NYRON HARRISON, ET AL.**                        **CIVIL ACTION**

**VERSUS**                                        **NO. 20-2916**

**JEFFERSON PARISH SCHOOL**                       **SECTION: "G"**
**BOARD, ET AL.**

### ORDER AND REASONS

In this litigation, Plaintiffs Nyron Harrison and Thelma Williams ("Plaintiffs") bring suit, individually and on behalf of their minor son Ka'Mauri Harrison ("Ka'Mauri"), against the Jefferson Parish School Board, Dr. James Gray, Cecily White, Terri Joia, Patricia Adams, and Clay Moise (collectively, "Defendants"), alleging injuries resulting from Ka'Mauri's suspension for displaying a BB gun on camera during remote learning.[1] Before the Court is the State of Louisiana's (the "State") "Motion to Intervene."[2] Defendants oppose the motion.[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion.

### I. Background

*A.*      ***Factual Background***

Plaintiffs' claims arise out of an incident that occurred on September 11, 2020, while Ka'Mauri was engaged in remote learning for Woodmere Elementary School ("Woodmere"), a

---

[1] Rec. Doc. 1-1; Rec. Doc. 30.

[2] Rec. Doc. 40.

[3] Rec. Doc. 49.

school within the Jefferson Parish School System.[4] Due to the COVID-19 pandemic, Plaintiffs enrolled three of their children in distance learning.[5] On September 11, 2020, Ka'Mauri, a nine year old fourth grade student at Woodmere, was receiving virtual instruction at home in his bedroom.[6] Plaintiffs claim that Ka'Mauri shares his bedroom with his younger brothers.[7] Plaintiffs allege that, while Ka'Mauri was taking a diagnostic assessment, he picked up a BB gun that his younger brother had tripped over and moved it away from his brother.[8] According to Plaintiffs, Ka'Mauri was unaware that the BB gun was in view of the camera on his computer screen.[9] Plaintiffs contend that Ka'Mauri never pointed the BB gun at the camera, and was only trying to remove it from the path of his younger brother when he picked it up.[10]

Plaintiffs allege that Ka'Mauri's teacher, Leslie Williams, witnessed the incident at issue.[11] Allegedly because Leslie Williams thought she saw a real gun, she reported the incident to Woodmere's principal, Cecily White ("White").[12] Plaintiffs allege that White signed a Behavior Report on September 14, 2020, suspending Ka'Mauri from Woodmere from September 16, 2020 through September 29, 2020 and recommending Ka'Mauri for expulsion.[13] Plaintiffs assert that

---

[4] Rec. Doc. 30.

[5] *Id.* at 5.

[6] *Id.* at 6.

[7] *Id.* at 5.

[8] *Id.* at 6.

[9] *Id.* at 7.

[10] *Id.*

[11] *Id.*

[12] *Id.* at 8.

[13] *Id.* at 9.

White never met with Ka'Mauri or spoke to him about the incident prior to suspending him.[14]

On September 16, 2020, Plaintiffs claim that they were given a "Woodmere School Expulsion Recommendation," in which Ka'Mauri was recommended for expulsion for violating the Jefferson Parish School System's policy against possessing "weapons prohibited under federal law."[15] Plaintiffs claim that the recommendation letter stated that Ka'Mauri would be suspended pending an expulsion hearing, yet, after receiving the letter, they were given no further information on any rules applicable to the hearing or a date for the hearing.[16]

On September 21, 2020 at 10:17 AM, Plaintiffs allegedly received notice via text message that the expulsion hearing would take place the next day—September 22, 2020 at 9:00 AM.[17] However, Plaintiffs assert that they were not given information on the laws or procedures to be used at the hearing, any witness statements, or Ka'Mauri's student file.[18] Plaintiffs claim that they only received information on the policies and procedures of the Jefferson Parish School System and the protocol for student expulsions later that day at the insistence of their attorney.[19] Plaintiffs contend that they did not receive any information on policies or procedures in place relating specifically to virtual learning, as the Jefferson Parish School System had no such policies in place, or witness statements taken from Ka'Mauri's classmates.[20]

---

[14] *Id.* at 9–10.

[15] *Id.* at 10–11.

[16] *Id.*

[17] *Id.* at 11.

[18] *Id.* at 12.

[19] *Id.*

[20] *Id.* at 13–14.

Plaintiffs allege that the expulsion hearing took place on September 22, 2020.[21] Plaintiffs claim that the following individuals were present at the hearing: Plaintiffs; Principal White; the Hearing Officer, Terri Joia ("Joia"); Ka'Mauri's teacher, Leslie Williams; the Behavior Interventionist, Stacie Trepagnier; and Plaintiffs' counsel.[22] Plaintiffs allege that Joia referred to Louisiana Revised Statute § 17:416 ("Section 17:416") as the statute governing procedures for the hearing.[23] Plaintiffs allege that their counsel objected throughout the hearing, alleging violations of due process.[24] Plaintiffs contend that throughout the hearing Joia assured Plaintiffs that they would have a right to appeal the outcome of the hearing.[25]

Plaintiffs claim that they received an email on September 23, 2020, stating that Ka'Mauri was found "guilty of displaying a facsimile weapon while receiving virtual instruction" and Ka'Mauri would be subject to a six day suspension and social work assessment.[26] Plaintiffs allege that they then requested an appeal of the outcome but were told that there was no right to appeal a suspension under Section 17:416.[27] Instead, Plaintiffs allegedly were informed that the right to appeal only attaches for expulsions.[28] Plaintiffs contend that their request for an appeal was denied by the School Board.[29]

---

[21] *Id.* at 14.

[22] *Id.*

[23] *Id.* at 15.

[24] *Id.* at 15–17.

[25] *Id.* at 17.

[26] *Id.* at 18.

[27] *Id.* at 19.

[28] *Id.*

[29] *Id.* at 20–21.

On October 23, 2020, the Louisiana legislature passed House Bill 83, known as the Ka'Mauri Harrison Act.[30] On November 5, 2020, Louisiana Governor John Bell Edwards signed House Bill 83 into law.[31] The Ka'Mauri Harrison Act revised Section 17:416(c)(4)–(5) as follows (revisions are underlined):

> (4) The parent or tutor of the pupil who has been recommended for expulsion pursuant to this Section may, within five days after the decision is rendered, request the city or parish school board to review the findings of the superintendent or his designee at a time set by the school board; otherwise the decision of the superintendent shall be final. If requested, as herein provided, and after reviewing the findings of the superintendent or his designee, the school board may affirm, modify, or reverse the action previously taken. The parent or tutor of the pupil shall have such right of review even if the recommendation for expulsion is reduced to a suspension.

> (5)(a) The parent or tutor of the pupil who has been recommended for expulsion pursuant to this Section may, within ten days, appeal to the district court for the parish in which the student's school is located, an adverse ruling of the school board in upholding the action of the superintendent or his designee. The court may reverse or revise the ruling of the school board upon a finding that the ruling of the board was based on an absence of any relevant evidence in support thereof. The parent or tutor of the pupil shall have such right to appeal to the district court even if the recommendation for expulsion is reduced to a suspension.

The legislation further provides that it will apply retroactively.[32]

Plaintiffs claim that after the passage of House Bill 83, Defendants finally agreed to hear Ka'Mauri's appeal on December 4, 2020.[33] Plaintiffs claim that they again asked for policies applicable to the hearing, but were told there were none.[34] Plaintiffs allege that the hearing was "biased and humiliating and it became apparent from very early on that Ka'Mauri was not going

---

[30] *Id.* at 25.

[31] *See* La. Rev. Stat. § 17:416(c).

[32] *See* HB No. 83.

[33] Rec. Doc. 30 at 31.

[34] *Id.*

to be given a fair hearing."[35] Plaintiffs allege that the School Board deliberated for less than thirty minutes before upholding Ka'Mauri's suspension, albeit reducing it to three days.[36]

## B.    Procedural Background

On October 2, 2020, Plaintiffs, individually and on behalf of Ka'Mauri, filed a "Petition for Judicial Review, and Alternatively, a Writ of Mandamus" ("Petition") against Defendants in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana.[37] On October 16, 2020, Plaintiffs filed a "First Supplemental and Amending Petition."[38] On October 26, 2020, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1331 and 1367, alleging federal question jurisdiction over Plaintiffs' claims arising under 42 U.S.C. §§ 1983 and 1985 and supplemental jurisdiction over the state law claims.[39]

On December 14, 2020, Plaintiffs filed a Second Amending and Supplemental Complaint ("Second Amended Complaint").[40] In the Second Amended Complaint, Plaintiffs seek judicial review of Ka'Mauri's suspension under Section 17:416.[41] Plaintiffs also bring claims for alleged violations of Ka'Mauri's procedural and substantive due process rights under both the Louisiana Constitution and the U.S. Constitution.[42] Moreover, Plaintiffs bring a claim against all Defendants for civil conspiracy and for retaliation under the First Amendment, and an "unconstitutional

---

[35] Id. at 33.

[36] Id. at 43.

[37] Rec. Doc. 1-1.

[38] Id. at 43–47.

[39] Rec. Doc. 1.

[40] Rec. Doc. 30.

[41] Id. at 48–49.

[42] Id. at 49–58.

conditions" claim against the School Board and Superintendent Gray.[43] Plaintiffs' federal claims are brought pursuant to 42 U.S.C. §§ 1983 and 1985.[44]

Plaintiffs also bring claims under Louisiana law. First, Plaintiffs bring Louisiana state law tort claims against Defendants including: a defamation claim against White, the School Board, and Clay Moise ("Moise"); a detrimental reliance claim against the School Board, White, Superintendent Gray, and Patricia Adams ("Adams"); an intentional infliction of emotional distress claim, or alternatively a negligent inflection of emotional distress claim, against all Defendants; and a negligence claim against the School Board, Superintendent Gray, Adams, and Joia.[45] Plaintiffs also bring a takings claim against the School Board under Louisiana Revised § Statute 13:51111.[46] Further, Plaintiffs bring a spoilation of evidence claim against Adams.[47]

Finally, Plaintiffs bring constitutional challenges to Louisiana Revised Statute § 17:416 and Jefferson Parish School System's policies.[48] Specifically, Plaintiffs claim that Louisiana Revised Statute § 17:416 is unconstitutional "facially and as applied to virtual learning environments" because it infringes on the rights to "privacy, parental independence, and fair notice."[49] Plaintiffs allege that Louisiana Revised Statute § 17:416(C) is unconstitutional as interpreted and applied by Jefferson Parish School System because it "deprives students of

---

[43] *Id.* at 58–59, 68–71.

[44] *Id.*

[45] *Id.* at 59–68.

[46] *Id.* at 72.

[47] *Id.* at 74.

[48] *Id.*

[49] *Id.*

procedural [d]ue [p]rocess."[50] Plaintiffs allege that Louisiana Revised Statute § 17:416—along with Jefferson Parish School System's "Procedures & Policies for Parents & Students," and "Board Policies"—are unconstitutionally vague and overbroad.[51] Finally, Plaintiffs claim that Louisiana Revised Statute § 17:416—along with Jefferson Parish School System's "Procedures & Policies for Parents & Students," and "Dangerous Weapon Policies"—violate the Second Amendment, the right to privacy, and the "right to be free from unwarranted government interference."[52]

For all of the above-mentioned claims, Plaintiffs seek damages for mental pain and suffering, future counseling and tutoring, lost income, legal expenses and costs, and punitive damages.[53]

On February 5, 2021, the State filed the instant motion to intervene.[54] On February 17, 2021, Defendants filed an opposition to the motion to intervene.[55] On February 25, 2021, with leave of Court, the State filed a reply in further support of the motion to intervene.[56]

## II. Parties' Arguments

### A.    *The State's Arguments in Support of the Motion to Intervene*

---

[50] *Id.*

[51] *Id.* at 75.

[52] *Id.*

[53] *Id.*

[54] Rec. Doc. 40.

[55] Rec. Doc. 49.

[56] Rec. Doc. 56.

The State seeks to intervene in the instant litigation pursuant to Federal Rule of Civil Procedure 24 and 28 U.S.C. § 2403(b).[57] The State alleges that Plaintiffs challenge the constitutionality of Louisiana Revised Statute § 17:416 in the Second Amended Complaint.[58] Therefore, the State argues that it has the "an unconditional statutory right" to intervene under 28 U.S.C. § 2403(b).[59] Further, the State contends that it has the right to intervene because "other claims and interests of [the State] are so situated that disposing of the action may as a practical matter impair or impede [the State]'s ability to protect them."[60] Specifically, the State points to its interests in: (i) "having its statutes and constitution correctly construed"; (ii) having [the Jefferson Parish School Board] comply with Louisiana law"; (iii) "having [the Jefferson Parish School Board] comply with its contractual obligations to the State"; and (iv) "avoiding exposure to the federal government for repayment of funds."[61]

The State further contends that the instant motion to intervene is timely under Federal Rule of Civil Procedure 5.1.[62] The State claims that it was filed within 60 days of the Second Amended Complaint and before the deadlines for "amendments to pleadings, third-party actions, cross claims, and counterclaims."[63]

**B.      *Defendants' Arguments in Opposition to the Motion to Intervene***

---

[57] Rec. Doc. 40-1 at 1.

[58] *Id.*

[59] *Id.*

[60] *Id.* at 2.

[61] *Id.*

[62] *Id.*

[63] *Id.*

In response, Defendants first argue that the State has no right to intervene in the instant action under 28 U.S.C. § 2403(b) because "Plaintiffs have not raised an actual challenge to any State statute but rather allege that Defendants' interpretation and application of State law was unconstitutional."[64] Defendants allege that "[w]hile Plaintiffs purport to challenge [Louisiana Revised Statute § 17:416]'s constitutionality on the face of the [Second] Amended Complaint, there is no substantive constitutional challenge to the statute's language or requirements found anywhere in Plaintiffs' allegations."[65]

Additionally, Defendants argue that the State has no right to intervene because Louisiana Revised Statute § 17:416 was recently amended by the Ka'Mauri Harrison Act.[66] Defendants claim that the State is authorized to intervene when a party substantively challenges a State law that affects the public interest.[67] However, Defendants assert that Plaintiffs and the State were "heavily involved" in drafting amendments to Louisiana Revised Statute § 17:416 after Ka'Mauri's suspension.[68] Defendants argue that any challenges to the constitutionality of Section 17:416 relate to the prior version of the statute, and Defendants suggest that Plaintiffs are not challenging the constitutionality of the current version of the statute. [69]

Defendants further allege that actions taken by Louisiana's Attorney General and Solicitor General "exhibit personal bias against the School Board and amount to advocacy on behalf of

---

[64] Rec. Doc. 49 at 14.

[65] *Id.* at 15.

[66] *Id.* at 19.

[67] *Id.*

[68] *Id.* at 20.

[69] *Id.*

Plaintiffs . . . in derogation of the duty to represent the interests of the State."[70] Because of this alleged bias, Defendants argue that permitting the State to intervene would be "inappropriate and highly prejudicial to Defendants."[71] Moreover, Defendants claim that the State's proposed Complaint in Intervention "goes way beyond the State's statutory intervention authority" in requesting declaratory and injunctive relief related to compliance with Section 17:416.[72] Defendants allege that the State "seeks essentially an advisory opinion on a multitude of issues, none of which involve the constitutionality of Section 17:416."[73]

Finally, Defendants argue that the motion to intervene is procedurally deficient because the State lacks standing to intervene and because the motion is untimely.[74] Defendants contend that because state employees and a state agency are already defendants in this action, the State's interests are adequately represented and intervention is unnecessary.[75] Further, Defendants argue that the instant motion is untimely under Federal Rule of Civil Procedure 5.1(c) because it was filed more than 60 days after Plaintiffs served the State with the state court petition, which Defendants argue put the State "on notice of the constitutional claims raised by Plaintiffs in this lawsuit."[76]

C.      *The State's Arguments in Further Support of the Motion to Intervene*

---

[70] *Id.* at 21.

[71] *Id.*

[72] *Id.* at 26.

[73] *Id.*

[74] *Id.* at 27.

[75] *Id* at 27–29.

[76] *Id.* at 29.

The State counters by alleging that it is entitled to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(1) and 28 U.S.C. § 2403 because the Second Amended Complaint unambiguously claims that Louisiana Revised § Statute 17:416 is facially unconstitutional and unconstitutional as applied.[77] The State argues that Plaintiffs' challenge to the applicability of Section 17:416 to virtual learning is necessarily a challenge to the constitutionality of the statute itself and intervention is therefore the State's right.[78]

The State further claims that Defendants' remaining arguments against intervention are incorrect. First, the State argues that the passage of the Ka'Mauri Harrison Act does not disturb the State's right to intervene because Section 17:416 still affects the rights of Louisiana citizens.[79] The State asserts that Defendants themselves recognize that the law has broad reach.[80] Moreover, the State argues that Defendants' claims surrounding the bias of the Attorney General and Solicitor General are irrelevant and do not affect the right of the State to intervene under 28 U.S.C. § 2403.[81] Further, the State claims that the instant motion to intervene was not untimely under Rule 5.1, as it was filed within 60 days of Plaintiffs' filing of the notice of constitutional challenge on February 8, 2021.[82] Even if the motion was untimely, the State contends that Rule 5.1 "expressly contemplates later interventions" and that no prejudice would result from this intervention.[83]

---

[77] Rec. Doc. 56 at 2.

[78] *Id.* at 2–3.

[79] *Id.*

[80] *Id.* at 3–4.

[81] *Id.* at 4.

[82] *Id.*

[83] *Id.*

Finally, the State asserts that the School Board is not a state agency, but instead is a "local independent agent" under the Louisiana Constitution.[84] The State contends that Defendants do not and cannot adequately represent the State's interests.[85] The State argues that Defendants represent only a limited section of the State while it represents the State as a whole.[86] The State contends that "no one, especially a local political subdivision, can represent the interests of a sovereign over the sovereign's objection."[87] Further, the State asserts that Defendants themselves have argued that Section 17:416 is unconstitutional, making clear that Defendants objective in this suit is "to avoid liability, not defend [Section 17:416]."[88]

In addition to arguing that it can intervene as a matter of right under 28 U.S.C. § 2403 and Federal Rule of Civil Procedure 24(a)(1), the State also claims that it is entitled to intervene as a matter of right under Rule 24(a)(2).[89] The State alleges that it has legally cognizable interests in: (i) "having its statutes and constitution correctly construed;" (ii) having [the Jefferson Parish School Board] [as a political subdivision of Louisiana] comply with Louisiana law"; (iii) "having [the Jefferson Parish School Board] comply with its contractual obligations to the State"; and (iv) "avoiding exposure to the federal government for repayment of funds."[90]

---

[84] *Id.* at 5.

[85] *Id.* at 7.

[86] *Id.*

[87] *Id.*

[88] *Id.* at 8.

[89] *Id.* at 6.

[90] *Id.*

Finally, the State argues that even if it is not entitled to intervene as a matter of right, it should be permitted to intervene under Rule 24(b).[91] The State contends that denying intervention and making it file a separate lawsuit would "needlessly expend the parties' and the courts' resources" and "greatly complicate this case."[92]

### III. Legal Standard on a Motion to Intervene

#### A.    *Intervention of Right*

In analyzing motions to intervene as a matter of right, courts look to Federal Rule of Civil Procedure 24(a). Rule 24(a) provides that:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
> (1) is given an unconditional right to intervene by a federal statute; or
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Fifth Circuit has made clear that, although the burden of proving intervention is on the movant, "Rule 24 is to be liberally construed" and "[f]ederal courts should allow intervention where no one would be hurt and the greater justice could be attained."[93] The inquiry "is a flexible one, and a practical analysis of the facts and circumstances of each case is appropriate."[94]

A party seeking to intervene under Rule 24(a)(2) must meet four requirements, namely:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical

---

[91] *Id.* at 9.

[92] *Id.*

[93] *Texas v. United States*, 805 F.3d 653, 656–57 (5th Cir. 2015).

[94] *Brumfield v. Dodd*, 749 F.3d 339, 342 (5th Cir. 2014).

matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.[95]

**B.**    *Permissive Intervention*

In motions to intervene based on permissive intervention, courts look to Federal Rule of Civil Procedure 24(b). Rule 24(b) provides:

> (1) *In General.* On timely motion, the court may permit anyone to intervene who:
>     (A) is given a conditional right to intervene by a federal statute; or
>     (B) has a claim or defense that shares with the main action a common question of law or fact.
> (2) *By a Government Officer or Agency.* On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:
>     (A) a statute or executive order administered by the officer or agency; or
>     (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

"Permissive intervention is wholly discretionary with the district court" and is reviewed for clear abuse of discretion.[96]

## IV. Analysis

The State seeks to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(1) and 28 U.S.C. § 2403.[97] Alternatively, the State argues that it has a right to intervene under Rule 24(a)(2) or should be permitted to intervene under Rule 24(b).[98] Before proceeding to the merits of the State's motion, the Court must address Defendants' preliminary argument that the motion is untimely.

**A.**    *Timeliness of the Motion to Intervene*

---

[95] *Texas*, 805 F.3d at 657.

[96] *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984).

[97] Rec. Doc. 40-1 at 1; Rec. Doc. 56 at 2.

[98] Rec. Doc. 56 at 6, 9.

As an initial matter, the Court must determine whether the motion to intervene was timely filed.[99]

Federal Rule of Civil Procedure 5.1 provides:

a) Notice by a Party. A party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute must promptly:
> (1) file a notice of constitutional question stating the question and identifying the paper that raises it, if:
>> (A) a federal statute is questioned and the parties do not include the United States, one of its agencies, or one of its officers or employees in an official capacity; or
>> (B) a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity; and
> (2) serve the notice and paper on the Attorney General of the United States if a federal statute is questioned—or on the state attorney general if a state statute is questioned—either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose.
(b) Certification by the Court. The court must, under 28 U.S.C. §2403, certify to the appropriate attorney general that a statute has been questioned.
(c) Intervention; Final Decision on the Merits. Unless the court sets a later time, **the attorney general may intervene within 60 days after the notice is filed or after the court certifies the challenge, whichever is earlier**. Before the time to intervene expires, the court may reject the constitutional challenge, but may not enter a final judgment holding the statute unconstitutional.

Plaintiffs filed a notice of constitutional challenge on February 8, 2021.[100] The State argues that under Rule 5.1, the instant motion is timely because it was filed within 60 days of the notice.[101]

Defendants, by contrast, argue that the instant motion is untimely because the State was "put on

---

[99] *Aubin v. Columbia Cas. Co.*, No. CV 16-290-BAJ-EWD, 2017 WL 1416814, at *3 (M.D. La. Apr. 19, 2017).

[100] Rec. Doc. 42.

[101] Rec. Doc. 40-1 at 2; Rec. Doc. 56 at 4.

notice of the constitutional claims raised by Plaintiffs" as early as October 26, 2020, when Plaintiffs' originally served the State with a copy of the state court petition.[102]

By the plain language of Rule 5.1, the State has 60 days to intervene from the date Plaintiffs filed a notice of constitutional challenge. Plaintiffs filed a notice of constitutional challenge on February 8, 2021—three days after the motion to intervene was filed. Therefore, the instant motion is clearly timely under Rule 5.1.

## B.    *Intervention of Right Under Federal Rule of Civil Procedure 24(a)*

As detailed above, Federal Rule of Civil Procedure 24(a) provides for intervention as a matter of right. Rule 24(a) provides for such intervention in two distinct situations: (i) Rule 24(a)(1) provides for intervention when so permitted by a federal statute and (ii) Rule 24(a)(2) provides for intervention when the moving party claims an interest in the ongoing litigation.

The State argues that it has a right to intervene in the instant matter under Federal Rule of Civil Procedure 24(a)(1).[103] Rule 24(a)(1) provides that a court must permit intervention upon a timely motion filed by anyone who "is given an unconditional right to intervene by a federal statute." Here, the State contends that 28 U.S.C. § 2403 gives the State the right to intervene.[104] 28 U.S.C. § 2403 provides in pertinent part:

> (b) In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The State shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to

---

[102] Rec. Doc. 49 at 29.

[103] Rec. Doc. 40-1 at 1.

[104] *Id.*

17

the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.

Because Plaintiffs are contesting the constitutionality of a state statute, Louisiana Revised Statute § 17:416, the State asserts that it has the right to intervene.[105]

Defendants make multiple arguments in opposition to the State's motion to intervene. First, Defendants argue that Plaintiffs are not challenging the constitutionality of Louisiana Revised Statute § 17:416 but instead are contesting only Defendants' interpretation and application of the statute within the context of virtual learning.[106] Next, Defendants allege that the State has no right to intervene because Section 17:416 was revised by the Ka'Mauri Harrison Act.[107] Defendants argue that the State seeks to intervene to "offer its opinions" on the prior version of Section 17:416, a defunct law that has no bearing on the public interest.[108] Finally, Defendants claim that the State does not have standing to intervene because its interests in this litigation are already represented by other defendants, including the Jefferson Parish School Board and two State officers or employees, Superintendent Gray and School Board member Moise.[109]

Under 28 U.S.C. § 2403 and Rule 24(a)(1), a state has the right to intervene if a party to a suit challenges the constitutionality of a state statute. The Fifth Circuit has distinguished between constitutional challenges to a statute itself and challenges to the application or interpretation of a state statute. For example, in *Haspel v. Davis Milling & Planting Co. Ltd. v. Board of Levee Commissioners of the Orleans Levee District*, the Fifth Circuit affirmed a district court's denial of

---

[105] *Id.* at 1–2.

[106] Rec. Doc. 49 at 14.

[107] *Id.* at 19.

[108] *Id.*

[109] *Id.* at 27.

a motion to intervene under Rule 24(a)(a).[110] The Fifth Circuit held that the State of Louisiana did not have a right to intervene under Rule 24(a)(1) because the legal issues presented in the case "rais[ed] only questions of the proper interpretation of Louisiana law" and not the constitutionality of the applicable state statute.[111]

Defendants are correct that many of Plaintiffs' constitutional challenges relate to Defendants' application and interpretation of Louisiana Revised Statute § 17:416 within the context of virtual learning. However, Plaintiffs also raise a facial challenge to the constitutionality of Section 17:416, alleging that Section 17:416 is "unconstitutionally vague and overbroad."[112] Therefore, Plaintiffs are arguing that the statute *itself* is unconstitutional—not simply that Defendants' application of the statute was unconstitutional. Because the constitutionality of Section 17:416 "is drawn in question," the State has the right to intervene under Rule 24(a)(1).

Moreover, Defendants' remaining arguments against intervention under Rule 24(a)(1) are unpersuasive. First, although the Legislature amended Section 17:416 in part through the Ka'Mauri Harrison Act, the statute remains very much "on the books" and sets out the disciplinary system for thousands of students within Louisiana schools. Thus, it clearly affects the public interest of Louisiana citizens. Moreover, the State's interests are not adequately represented by other defendants in the instant litigation. While "Louisiana courts have referred to school boards as 'agencies' of the [S]tate," the Fifth Circuit has made clear that "a suit against a parish school board is not a suit against the state," and that school boards are not "arms of the state," but instead

---

[110] 493 F.3d 570 (5th Cir. 2007).

[111] *Id.* at 578.

[112] Rec. Doc. 30 at 75.

"possess[] an identity sufficiently distinct from that of the State of Louisiana."[113] The Fifth Circuit,

therefore, has identified school boards as "local independent agents," instead of agencies of the

State.[114] Considering the State's interests are not adequately represented by the School Board,

Superintendent Gray, or School Board member Moise, it has a right to intervene in the instant suit.

Alternatively, the State has the right to intervene under Rule 24(a)(2). As stated above, to

intervene under Rule 24(a)(2), the State must meet four requirements:

> (1) the application for intervention must be timely; (2) the applicant must have an
> interest relating to the property or transaction which is the subject of the action; (3)
> the applicant must be so situated that the disposition of the action may, as a practical
> matter, impair or impede his ability to protect that interest; (4) the applicant's
> interest must be inadequately represented by the existing parties to the suit.[115]

The first requirement is met here because, as discussed above, the instant motion to

intervene is timely. As to the second requirement, "[a] potential intervener asserts an interest that

is related to the property or transaction that forms the basis of the controversy in the case into

which she seeks to intervene, if the potential intervener has a 'direct, substantial, [and] legally

protectable' interest in the property or transaction that forms the basis of the controversy in the

case into which she seeks to intervene."[116] Here, the State provides at least four interests it has in

the instant action: (i) "having its statutes and constitution correctly construed"; (ii) having [the

Jefferson Parish School Board] [as a political subdivision of Louisiana] comply with Louisiana

law"; (iii) "having [the Jefferson Parish School Board] comply with its contractual obligations to

---

[113] *Minton v. St. Bernard Par. Sch. Bd.*, 803 F.2d 129, 131–32 (5th Cir. 1986).

[114] *Id.*; *see also Sch. Bd. of Par. of St. Charles v. Roxco, Ltd.*, No. CIV.A. 01-0359, 2001 WL 283094, at *1 (E.D. La. Mar. 21, 2001) (Porteous, J.).

[115] *Haspel*, 493 F.3d at 578.

[116] *John Doe No. 1 v. Glickman*, 256 F.3d 371, 379 (5th Cir. 2001).

the State"; and (iv) "avoiding exposure to the federal government for repayment of funds."[117] Considering the Fifth Circuit has held that this "interest test" is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process,"[118] this Court finds that the State has a sufficient interest in intervention.

As to the third requirement, denying the State intervention in this action could impede its ability to protect its interests if, for example, the statute was interpreted in a different manner than the State believes proper. With respect to the fourth requirement, the Fifth Circuit has made clear that the movant's burden of proving inadequate representation is a "minimal" one that is met if the movant shows that "representation may be inadequate."[119] As discussed above, the State's interests are not adequately represented in the instant suit. Accordingly, because the State has satisfied all four requirements of Rule 24(a)(2), it has a right to intervene in the instant suit.

### V. Conclusion

For the reasons set forth above, the State has the right to intervene in this matter under either Federal Rule of Civil Procedure 24(a)(1) or Federal Rule of Civil Procedure 24(a)(2). Therefore, the Court need not reach the State's alternative argument that it should be allowed to intervene under Federal Rule of Civil Procedure 24(b). Accordingly,

---

[117] Rec. Doc. 40-1 at 2.

[118] *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (quoting *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1202 (5th Cir. 1992)).

[119] *Id*. (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972)).

**IT IS HEREBY ORDERED** that the State of Louisiana's "Motion to Intervene[120] is **GRANTED**.

**NEW ORLEANS, LOUISIANA,** this _____ 2nd _____ day of March, 2021.

*Nannette Jolivette Brown*
_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[120] Rec. Doc. 40.